**Felder Lafayette DuBOIS, Jr., Appellant,**

v.

**Lesli Ann DuBOIS, Appellee.**

**No. 12–96–00310–CV.**

Court of Appeals of Texas,
Tyler.

Sept. 30, 1997.

Ricky W. Richards, Jacksonville, for appellant.

Bert Creel, Tyler, for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

HOLCOMB, Justice.

Felder Dubois ("Felder") appeals the trial court's judgment which was based on findings that he was intentionally underemployed, that his earning potential was $2,820.00 per month, and that child support for his two minor children should be based upon his earning potential rather than upon actual wages. Lesli Dubois ("Lesli") appeals the trial court's denial of alimony. We will **reverse and remand** to the trial court for a new trial on the issue of child support. We will **affirm** the trial court's order denying alimony.

Because both parties present evidentiary questions, we will briefly recite the facts. Felder and Lesli, along with their two minor children, lived in Tyler, Texas. Felder worked as a lineman with Cherokee County Electric Co-op, where his net income was $2,820.00 per month. Lesli was a full-time wife and mother, although she was certified to work as an elementary school teacher.

Felder and Lesli began experiencing marital difficulties, and Lesli moved with the children to her parents' house in Van Zandt County. Felder moved into an apartment in Tyler and continued working for the Co-op. Lesli filed a petition for divorce, but at the hearing for temporary orders, Lesli and Felder decided to attempt a reconciliation. While taking steps toward reconciling, Lesli and Felder continued to live separately and agreed to informally follow the state child support and possession guidelines. Felder agreed to pay $500.00 per month temporary support for his wife and $705.00 per month in child support. No temporary court orders establishing child support or possession were entered.

Felder testified that in his position with the Co-op, he was required to be on call every third weekend. Consequently, he was frequently unable to see the children on many of his scheduled weekends, and Lesli refused to accommodate his schedule. Additionally, Lesli wanted the children to play baseball, declining to allow Felder to take the children away to Tyler when there were practices or games at home. She also asked Felder to reduce the amount of time he had with his children in the summer so that they could finish the baseball season. Lesli testified that Felder threatened to quit his job and move to his parents' house in Leggett, Texas in order to have more time with his children in the summer. He reasoned that pursuant to the standard possession order, he would have the children twelve additional days per summer if he lived more than 100 miles away.

When Felder's and Lesli's attempts to reconcile failed, Felder quit his job because he "was upset emotionally because of not seeing [his] children," and to garner the support of his personal family. Felder also testified that due to his emotional turmoil, he was afraid that his lack of concentration in his high risk job was endangering his life.[1] Felder moved to his parents' house in Leggett, and began work as an electrical contractor with his brother-in-law, where he did not work with live wires. He only netted $633.00 per month in his new job, but was free on weekends and had a flexible schedule to facil-

---

1. In his job as a lineman, Felder had to work with primary voltage, 72,000 volts, on high lines.

itate visitation. Felder discontinued spousal support payments, reduced child support payments to $200.00 per month, and paid $252.00 per month for insurance coverage for the children.

Upon Felder's request, the trial court filed findings of fact and conclusions of law. The court found the following: 1) Felder intentionally became underemployed without giving notice to his former employer and with the intent to lower his child support; 2) Felder's actual income is significantly less than what he could earn because of his intentional underemployment; 3) Felder's earning potential is a net income of $2,820.00 per month; and 4) the amount of child support, if the child support guidelines are applied to Felder's earning potential, is $641.00 per month. Accordingly, the trial court rendered judgment that Felder pay $641.00 child support which was more than his net monthly income.

■ The trial court is accorded broad discretion in setting and modifying child support payments and, absent a clear abuse of discretion, the trial court's order will not be disturbed on appeal. *Stocker v. Magera,* 807 S.W.2d 753, 754 (Tex.App.—Texarkana 1990, writ denied). In deciding whether a trial court has abused its discretion, we must determine whether the court acted without reference to any guiding rules and principles, *i.e.,* arbitrarily or unreasonably. *Tucker v. Tucker,* 908 S.W.2d 530, 532 (Tex.App.—San Antonio 1995, writ denied). In making that determination, we must view the evidence in the light most favorable to the trial court's actions and indulge in every legal presumption in favor of the judgment. *Id.* If there is some probative and substantive evidence to support the judgment, the trial court did not abuse its discretion. *Id.* (*citing Holley v. Holley,* 864 S.W.2d 703, 706 (Tex.App.—Houston [1st Dist.] 1993, writ denied)).

■ If a parent's actual income is significantly less than what he could earn because of intentional unemployment or underemployment, the court may apply the child support guidelines to his earning potential. TEX. FAM.CODE ANN. § 154.066 (Vernon 1996). In effect, the court can prevent a parent from evading child support by treating the par-

ent's earning potential as an element of his net resources. The Family Code fails to define "intentional underemployment or unemployment," and there is an absence of caselaw illuminating the utilization of § 154.066. The traditional interpretation, however, requires a finding that the reduction in income must have been effectuated with a design to reduce the child support payments. *See Starck v. Nelson,* 878 S.W.2d 302, 307 n. 10 (Tex.App.—Corpus Christi 1994, no writ); *Woodall v. Woodall,* 837 S.W.2d 856, 858 (Tex.App.—Houston [14th Dist.] 1992, no writ); *Casterline v. Burden,* 560 S.W.2d 499, 501 (Tex.Civ.App.—Dallas 1977, no writ); *McSween v. McSween,* 472 S.W.2d 307, 310 (Tex.Civ.App.—San Antonio 1971, no writ). Thus, in order for a court to find that a parent is intentionally underemployed or unemployed under TEX. FAM.CODE § 154.066, there must be evidence that the parent reduced his income for the purpose of decreasing his child support payments. There is no presumption that simply because a parent is no longer as lucratively employed as he was during his marriage, he is intentionally underemployed or unemployed. The requisite intent or lack thereof, however, may be inferred from such circumstances as the parent's education, economic adversities and business reversals, business background, and earning potential. *Kish v. Kole,* 874 S.W.2d 835, 839 (Tex.App.—Beaumont 1994, no writ). In addition, we must be cognizant of a parent's right as a citizen to the pursuit of happiness and to the freedom to live where he chooses. *See Hunt v. Hudgins,* 168 S.W.2d 703, 705 (Tex.Civ.App.1943, no writ). And it is axiomatic that although a parent's financial support of his children is of prime importance, so too is his physical presence in their lives. Although we acknowledge no clear authority on this issue, we conclude that in an original proceeding for divorce, once the parent obligated to pay child support has offered proof of his current wages, the obligee has the burden to show that the obligor is intentionally underemployed or unemployed.

■ In the instant case, Felder offered testimony that he was currently earning $240.00 per week from his job as an electri-

cian. Although the only evidence as to Felder's financial ability to pay child support came from him, it was of a nature that could have been contradicted, at least to some extent, either directly or indirectly. *Anderson v. Anderson*, 503 S.W.2d 124, 127 (Tex.Civ. App.—Corpus Christi 1973, no writ). For example, Lesli could have presented evidence as to the average wages of an electrician in Leggett, Texas to show that Felder was, in fact, underemployed. We cannot disregard the unchallenged statements of Felder with reference to his financial condition. *See Ex Parte Gonzales*, 414 S.W.2d 656, 657 (Tex. 1967). Furthermore, Lesli did not contradict or refute Felder's testimony that the reason he left his job in Tyler was because he was upset by the break up of his family, and because moving to Leggett would enable him to see his children more often. Lesli admitted that the reason Felder "threatened" to move was so that he could have more time with his two children. Lesli did not discredit Felder's testimony that he relocated to his hometown in order to be with his family, just as she had done. She did not contradict Felder's statements that his job in Tyler was high risk, that he was extremely upset by his inability to see his children, or that his emotional state endangered him on his job.

▇▇▇ The trial court abused its discretion when it set Felder's child support payment at $641.00 per month. There was no evidence in the record to support the inference that Felder was intentionally underemployed to avoid his child support responsibilities. The evidence was undisputed that Felder left his job in Tyler and moved to Leggett in order to have more time with his children. In addition, there was no evidence to support the trial court's finding that Felder's earning potential in Leggett was $2,820.00 per month. That Felder left a higher paying job for a lower paying job is not, in and of itself, sufficient evidence to support a finding of intentional underemployment. Nor is evidence that Felder earned $2,820.00 per month in Tyler proof that he could earn that same amount in Leggett.[2] We fail to discern from the evidence the reasonable inferences

sufficient to support the actions of the trial court. We hold that the trial court clearly abused its discretion when it applied the child support guidelines to a net income of $2,820.00 per month. Felder's three points of error are sustained.

In regard to Lesli's complaint that the trial court failed to order Felder to make spousal maintenance payments, we note that Lesli's appellate brief presents several paragraphs entitled "Brief of Appellee on Appellee's Point of Error—Preliminary Statement of the Nature of the Case." She does not state a point of error upon which her appeal is predicated. Within these paragraphs, however, Lesli does state that she filed a Motion for New Trial on the issue of the court's denial of alimony. She recites evidence from the statement of facts, then refers to the court's finding that it denied alimony based upon the parties' agreed division of property. She quotes the Family Code in regards to the purpose of spousal maintenance, and cites the California Family Code for her position that the courts should consider the standard of living established by the parties during marriage in determining needs of the spouse seeking maintenance. Lesli then cites Arizona caselaw for the proposition that the spouse seeking support is not required to consume her property in order to meet her reasonable needs. In conclusion, Lesli asserts that she meets all requirements for maintenance under § 3.9602 of the Texas Family Code. Although Lesli's brief in clearly not in compliance with Tex.R.App. P. 74, we will consider her arguments in the interest of justice.

In a suit for divorce, the court may order maintenance for either spouse *only* if the parties have been married ten years or longer, the spouse seeking maintenance lacks sufficient property to provide for the spouse's minimum reasonable needs, and the spouse seeking maintenance: a) is unable to support herself through appropriate employment because of an incapacitating physical or mental disability; b) is the custodian of a physically

---

2. We consider it to be an infringement of Felder's liberty interest to force him to live in Tyler rather than in Leggett so that he could actually earn the amount of wages upon which the court based his child support payments. Tex. Const. art. I, § 19.

or mentally disabled child which makes it necessary for the spouse not be employed outside the home; or c) clearly lacks earning ability in the labor market adequate to provide support for the spouse's minimum reasonable needs. TEX. FAM.CODE ANN. § 3.9602 (Vernon 1996).

At the final hearing, there was evidence that Felder had paid Lesli $500.00 per month in temporary support for five months. There was also testimony that Lesli had received $7,400.00 in cash and approximately $18,000.00 in benefits from Felder's retirement plan in property settlement. Lesli admitted that she was a certified teacher, that she was currently looking for a position in surrounding school districts, and that she was willing to move to another community in order to be gainfully employed. The trial court, in its findings of fact and conclusions of law, found that the division of the property that the parties agreed to justified the denial of alimony. Based upon the evidence adduced at trial, the trial court did not abuse its discretion in denying spousal maintenance for Lesli. Lesli's point of error is overruled.

We **reverse and remand** for a new trial on child support, and **affirm** the trial court's order denying alimony.