NO. 07-02-0419-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



JANUARY 23, 2004



______________________________




IN THE MATTER OF THE MARRIAGE OF LINDA


KAY PERKINS AND STANLEY ALTON PERKINS


AND IN THE INTEREST OF MINOR CHILREN



_________________________________



FROM THE 356TH DISTRICT COURT OF HARDIN COUNTY;



NO. 40,640; HONORABLE BRITT PLUNK, JUDGE



_______________________________



Before REAVIS and CAMPBELL, JJ., and BOYD, S.J. (1)

 In this appeal, appellant Stanley Alton Perkins (Stanley) challenges portions of a
decree dissolving his marriage to Linda Kay Perkins (Linda). Although he does not
challenge the termination of the marriage relationship, he presents 13 points arguing the
trial court erred in its division of the parties' community estate, its determination of child
support, its failure to allow reimbursement, and its denial of his evidentiary objections. We
overrule those points and affirm the judgment of the trial court.

 After cohabiting for a period of time in a house located at 860 N. 2nd in Silsbee, the
parties were married in September 1988. They had a daughter in 1989 and a son in 1996. 
The couple separated in December 1998, and Linda filed suit for divorce in November
2000. In responding to Linda's suit, Stanley counterclaimed for divorce and filed a property
inventory in which he listed the community property as two houses, four vehicles, various
items of personal property, and $19,714 in unsecured community debts. Linda filed an
inventory in which she claimed the house located at 860 N. 2nd Street in Silsbee was her
separate property. She listed additional community property including a go cart, and a race
car and its trailer. She also included $16,008 in unsecured community debts.

 The parties were able to agree upon the custody and visitation issues. However,
the support and property division issues were tried to the court in May 2002. As it becomes
necessary to a discussion of specific points of error, the evidence will be referred to by us. 
In its August 19, 2002 final decree, and in addition to issues not relevant here, the court
divided the "estate of the parties" and awarded both houses to Linda, including the
outstanding mortgages, together with a 1988 Mazda automobile, a 1994 Pontiac
automobile, 11 other items of personal property, and the unsecured debt owed on two
credit cards totaling $12,079.

 The court awarded Stanley the 1991 and 1998 model pickup trucks, a 1982 Honda
Civic automobile, and 11 other items of personal property, including the go cart and the
race car. The race car trailer was not included in the list of personal property items. 
Stanley was only assigned the debts that he incurred after the couple separated in
December 1998, but was ordered to pay child support in the amount of $536 per month.

 At Stanley's request, the trial court made findings of fact and conclusions of law. As
relevant here, the court found the child support was based on a $32,000 annual income
(finding 7), the house located at 860 N. 2nd Street was acquired by Linda before marriage
(finding 8), and the couple lived in the 2nd Street house before purchasing a house at 200
S. 14th Street (finding 9). The trial court also found Stanley was not entitled to
reimbursement for improvements made to the 2nd Street house because it was Linda's
separate property and Stanley benefitted from living in the house during the marriage, as
well as by the court's division of the community property and community debts and by the
award of his retirement benefits to Stanley (findings 10 and 11). It found the couple's
equity in the 14th Street house to be $4,000 (finding 12). In findings 14 and 16, the court
found Linda was awarded $5,925 in community assets and $12,079 in unsecured
community debts. Findings 15 and 17 were that Stanley was awarded $9,525 in
community assets and $3,929 in community debts.

 Because this appeal involves the trial court's property division, our review of that
division must be made in the context of the general principles governing the division of
property in divorce cases. A court always begins with the presumption that all property
possessed at the time of the marriage dissolution is community property and this
presumption can only be overcome by clear and convincing evidence. Tex. Fam. Code
Ann. §3.003 (Vernon 1998). The controlling issue in considering the property division is
whether the division is just and right. Rafferty v. Finstad, 903 S.W.2d 374, 376 (Tex. App.--Houston [1st Dist.] 1995, writ denied). The trial court is afforded wide discretion in dividing
the marital estate and its decision will not be disturbed absent a clear abuse of that
discretion. Jacobs v. Jacobs, 687 S.W.2d 731, 733 (Tex. 1985). 

 A court may not make a division that divests a party of their separate property. 
Eggemeyer v. Eggemeyer, 554 S.W.2d 137, 142 (Tex. 1977). However, a mere
mischaracterization of property does not require reversal if the division is otherwise
equitable. Magill v. Magill, 816 S.W.2d 530, 533 (Tex. App.-Houston [1st Dist.] 1991, writ
denied).

 Spouses may have either of two types of claims for reimbursement from the other
party or the community estate. First, if separate property is used to acquire community
property, the estate making the separate property contribution has equitable title in the
community property to the extent of the contribution. See In re Marriage of Thurmond, 888
S.W.2d 269, 273 (Tex. App.-Amarillo 1994, writ denied). As equitable title is a property
right, it may not be divested from a spouse without violating our state constitution. Id. 

 Additionally, in 1999, by adding Subchapter E to Chapter 1 of the Family Code, the
legislature codified the allowance of equitable claims for reimbursement when one marital
estate makes an economic contribution benefitting another marital estate. See Tex. Fam.
Code Ann. §§ 3.401 - .406 (Vernon Supp. 2004). These provisions address circumstances
when, for example, community funds have been used to reduce the debt on separate
property. Even so, economic contribution does not arise from expenditures for ordinary
maintenance and repair or from contribution of time or effort during the marriage. Tex.
Fam. Code Ann. § 3.402(b) (Vernon Supp. 2004).

 Stanley's 13 points of error fall into four groups. The first group concerns the trial
court's property division and failure to award reimbursement to him. His specific complaints
are that the court erred in: 1) finding he benefitted from living in Linda's separate property
home and in considering that benefit in denying reimbursement; 2) failing to award
reimbursement "either for expenditures on community debt or for improvement of [Linda's]
separate estate," 9) using his retirement benefits as an offset in making the property
division when there was no evidence of the value of the retirement benefits, and 10)
considering Linda's use of community funds to pay her expenses as a basis for denial of
reimbursement.

 Stanley concedes that in his pleadings he did not assert a claim for reimbursement
but that does not matter, he asserts, because the issue was tried by consent. Tex. R. Civ.
P. 67. The trial court's letter ruling that Stanley was entitled to some reimbursement "based
upon community expenditures to separate property" and its fact finding 11 support this
contention. Stanley's claims for reimbursement appear to arise from expenditures for the
addition of a porch to Linda's separate property at 860 N. 2nd Street, the removal of trees
in front of that house, and the reduction of the debt owed on the house.

 The trial court found that the porch was added in 2001 at an approximate cost of
$1,750. (2) Stanley does not dispute this amount, but citing Anderson v. Gilliland, 684
S.W.2d 673 (Tex. 1985), he argues the proper measure for reimbursement is the increase
in the value of the property. For two reasons, we disagree. Initially, Stanley does not cite
any evidence that would show how much the new porch increased the value of the
property. Secondly, such claims for economic contribution are now governed by sections
3.401 through 3.406 of the Family Code. Section 3.403 sets out a specific method for
calculating the amount of a claim for economic reimbursement. It requires evidence of the
value of (or equity in) the property at the dissolution of the marriage, the amount
contributed by the contributing estate (here $1,750 by the community estate), (3) contributions
by the benefitted estate, and the value (or equity) of the property at the time of the
marriage. Stanley has not identified evidence of these amounts other than the amount of
contribution by the community estate, and our examination of the record convinces us that 
there is not sufficient evidence to show a basis upon which the trial court could make a
specific determination of the amount of Stanley's equitable claim for reimbursement.

 Stanley also asserts the trial court erred in failing to allow reimbursement for
community funds used to reduce the debt on the S. 14th Street house awarded to Linda as
her separate property. Again, we disagree. Apparently, based on Linda's testimony that
the house had a value between $57,000 and $60,000 (4) and the purchase money debt on
the house was $55,983 in February 2002, the trial court found the community estate had
a net equity of $4,000 in the house. 

 Pointing to Linda's testimony in which she avers the note balance was "50," Stanley
argues that her testimony that the house had a market value of $60,000 was evidence that
"$10,000 [was] paid into the house by the community" and he is entitled to reimbursement
for half of that amount. However, as we mentioned above, under section 3.403 of the
Family Code, a marital estate is only entitled to a reimbursement claim when it makes an
economic contribution to property owned by another marital estate. Here, the S. 14th
Street house was community property and the debt on the house was also a community
debt, thus the payments on that debt were not an economic contribution to another marital
estate. Thus, no claim for economic contribution existed. Id. The trial court did not err in
the method it used for determining the community estate's equity at the time of the
marriage dissolution as a basis for making a division of that property. Stanley's second
point is overruled.

 In his ninth point, Stanley contends that because there was no evidence of the
amount of his retirement benefits, the trial court erred in using those benefits to offset his
claims for reimbursement. At trial, Linda testified that although she did not have any
specific information about the value of Stanley's retirement benefits accrued during the
marriage, she requested they be divided equally. Our examination of the record reveals
that during the closing arguments, the trial court inquired if there was any information
available on the value of Stanley's retirement benefits. Without objection, Stanley's
attorney replied that it was a defined benefits plan with no present value but the anticipated
benefits were $128 per month. As we noted above, in its findings, the trial court stated that
any claim for reimbursement to which Stanley was entitled was offset by the division of the
community estate and community debts, including his retirement benefits. 

 Stanley now argues that the division was an abuse of discretion because, without
any information as to the amount of the benefits, the trial court had no basis upon which
to make the finding. However, the record does not support that contention. As we have
noted, the trial court did have information on the amount of the benefits from Stanley's
attorney. Indeed, in considering whether the trial court abused its discretion in its decision,
it is important to note that Stanley failed to present evidence upon which the court could
determine the amount of his claim for economic contribution.

 In a related argument, Stanley takes the position that the trial court failed to comply
with Family Code section 6.711 which requires a court, upon proper request, to make
findings of fact and conclusions of law characterizing and valuing the party's assets,
liabilities, claims and offsets "on which disputed evidence has been presented." Stanley
particularly complains of the court's failure to place specific values upon his retirement
account and his occupancy of Linda's separate property house. However, there was no
evidence presented by either party on the value of Stanley's occupancy of the house and
the only information pertaining to the value of Stanley's retirement benefits was from his
counsel and was undisputed. Thus, there was no disputed evidence on those items that
would require resolution by a trial court finding.

 We note Stanley's citation to Roberts v. Roberts, 999 S.W.2d 424, 434 (Tex. App.-El
Paso 1999, no pet.), for the proposition that Linda bore the burden of presenting evidence
concerning the value of his retirement benefits. However, in relevant part, the Roberts
court's actual pronouncement was "[t]he Wallace (5) opinion states that it is the burden of the
parties to introduce evidence as to the values of the assets whereby a range of value can
be determined by the trial court." (Emphasis added). That comment does not support
Stanley's position that the burden was Linda's alone. Even so, no further analysis of the
Roberts opinion is necessary because the issue is now governed by section 6.711. Given
the limited evidence presented at trial by both parties, we cannot say that the trial court's
resolution of Stanley's claim for reimbursement and retirement benefits amounted to an
abuse of its discretion. Stanley's ninth point is overruled.

 In his tenth point, Stanley argues the trial court erred in its finding that Linda had
reduced unsecured community debts by $8,450 and used that finding as a basis for
denying reimbursement. The trial court's specific finding in its 13th finding of fact was that
Linda had reduced the $24,450 balance owed on community credit card debt on the date
the couple separated to a balance of approximately $16,000 owed on the date of trial. The
thrust of Stanley's argument is that any reduction in that debt cannot be used to deny his
claim for reimbursement because Linda's repayment would have been from community
funds.

 Supporting his argument, Stanley reasons that trial court finding 11 shows it used
the debt reduction to deny him reimbursement. Finding 11 reads:

 Any claim that [Stanley] may have for reimbursement for improvements made
to the 860 2nd Street property in Silsbee, Texas was offset by the benefit that
[Stanley] received by living in the house during the marriage of [Linda and
Stanley] and by the division of [the] community property and community
debts, including [Stanley's] retirement benefits.


We disagree that this finding shows the trial court improperly used the debt reduction to
deny reimbursement. Rather, it makes no mention of the debt reduction, but merely states
that Stanley's claim for reimbursement was considered by the court in making its property
division. We overrule Stanley's tenth point.

 Stanley is correct in his first point contention that the trial court erred in using his
occupancy at 860 N. 2nd Street as a basis to offset part of his claim for economic
contribution. Section 3.403(e) of the Family Code specifically disallows such use to offset
a claim for economic contribution. Even so, the error does not automatically require
reversal. We may only reverse if the error probably caused the rendition of an improper
judgment or probably prevented Stanley from presenting his case on appeal. Tex. R. App.
P. 44.1(a). Given the indefinite evidence supporting Stanley's claim for economic
contribution, and viewing the property division as a whole, we cannot say the error probably
caused the rendition of an improper judgment or prevented Stanley from presenting his
appeal. Stanley's first point is overruled.

 Stanley's second group of points concern the trial court's child support provisions. 
In his third point, he asserts the trial court erred in failing to provide a reduction in child
support when the older child turned 18. His only supporting argument is a statement that
there is a seven year age difference between the two children and the order should
"decrease to around $400/month" when the older child turns 18. His argument only
references the divorce decree provision setting support at $536 per month and cites no
authority supporting his contention that the omitted provision requires reversal.

 Texas courts have rejected identical arguments. See Ex parte Mathis, 822 S.W.2d
727, 732 (Tex. App.-Tyler 1991, no writ), citing Gross v. Gross, 808 S.W.2d 215, 219 (Tex.
App.-Houston [14th Dist.] 1991, no writ). When the first child turns 18, by virtue of Texas
Family Code section 156.401 (Vernon 2002), Stanley has the right to seek a modification
of his support obligation. Stanley's third point is overruled.

 Stanley's fourth, fifth, and sixth points are closely related. In point four, he assigns
error to the trial court's failure to state his net resources as required by section 154.130(b)
of the Family Code. In point five, he argues the trial court improperly deviated from the net
resource calculation guidelines, and in point six, he argues the court presumed he could
earn additional income. 

 Section 154.130 of the Family Code only requires findings on, inter alia, the monthly
net resources of the obligee and obligor if: 1) a party files a written request not later than
ten days after the hearing, 2) a party makes an oral request during the hearing, or 3) the
court orders an amount of child support that varies from the statutory percentage
guidelines. Tex. Fam. Code Ann. §154.130(a) (Vernon 2002).

 The hearing in this case was held on May 15, 2002. Stanley's request for findings
under section 154.130 was not filed until August 29, 2002, which was not within the
requisite statutory time period. He does not contend, and the record does not show, that
he made an oral request for findings during the hearing. Although Stanley additionally
argues the findings were required because the support ordered varied from the statutory
guidelines, without a finding on net resources, we cannot determine if there was a variance
from the percentage guidelines. Even so, we do note that the trial court found that
appellant's support obligations "should be based upon a gross yearly amount of $32,000." 
 Thus, in round figures and based upon the 2002 tax charts adopted pursuant to section
154.061(b) of the Family Code, appellant's net monthly resource would be $2,132. Under
the child support guidelines set out in section 154.125, his child support obligations would
be $533. The trial court's support order of $536 was within the purview of the statutory
guidelines. Stanley's fourth and fifth points are overruled.

 The gist of Stanley's sixth point is that the trial court erred in finding his support
should be based upon a gross annual income of $32,000 when the evidence showed that
his income at the time of trial was $29,738. He argues that this amounts to a finding that
he was intentionally underemployed, see Tex. Fam. Code Ann. §154.066 (Vernon 2002),
and points out that such a finding requires evidence of a design to reduce child support
payments. He cites and relies upon Dubois v. Dubois, 956 S.W.2d 607, 610 (Tex.
App.-Tyler 1997, no pet.), in which the court reversed a finding that the father's earning
potential was $2,820 per month when the only evidence on the question was that his
current income was less than $1,000 per month. Id. at 611. 

 Unlike Dubois, the court's finding here was based upon an average of actual
earnings, rather than earning potential. In its finding of fact number seven, the court found
Stanley's annual income for the three previous years was $35,859 in 1999, $37,457 in
2000, and $29,738 in 2001. The court's $32,000 recitation was well below his average
earnings of $34,351 (6) during those years. Thus, the $32,000 finding was not based upon
a determination of intentional underemployment, but upon the evidence of his actual
income, recognizing that Stanley's income varied, and giving appropriate weight to his
decreased earnings the previous year. The record does not show that the trial court
abused its discretion in making the finding. Stanley's sixth point is overruled.

 In his seventh and eighth points, Stanley asserts the trial court erred in not
considering Linda's net resources and failing to reduce his support obligations because of
those resources. He argues that the trial court's alleged failure violated Article 1, Section
3a of the Texas Constitution which prohibits the denial of equal protection on the basis of
gender. In support of that proposition, he cites and relies upon Ulrich v. Ulrich, 652 S.W.2d
503 (Tex. App.-Houston [1st Dist.] 1983, no writ) and Kish v. Kole, 874 S.W.2d 835, 837
(Tex. App.-Beaumont 1994, no writ). However, those cases do not support his proposition. 
For example, in Ulrich, the appellate court recognized that both parents have a continuing
duty to support the children but, after reviewing the assets and obligations of the parties,
opined that there was no constitutional or statutory violation and held the trial court acted
within its discretion in failing to order the mother to pay child support. Ulrich, 652 S.W.2d
at 506. Likewise, in Kish, the appellate court held that a trial court, after considering the
ability of both parents to contribute to their child's support, did not abuse its discretion in
failing to order the mother to pay child support. 

 The record does not support Stanley's argument that the trial court erred in setting
the amount of child support within the statutory guidelines and he has not presented any
challenge to the constitutionality of the statutes. Stanley's seventh and eighth points are
overruled.

 In his final group of points, Stanley challenges the admissibility of the testimony of
Linda's expert witness on the value of the real property. In doing so, he posits that the
expert's testimony should have been excluded because Linda did not timely supplement
her discovery responses (point 11), the witness was not qualified as an appraiser (point
12), and the reliability of the witness's testimony was not shown (point 13).

 When Linda called Bob Metz, the witness in question, to testify on the value of the
property, Stanley objected on the basis that Metz had not been included in the list of
witnesses contained in her discovery response. Linda's attorney responded that he had
informed Stanley's attorney of his intent to call the witness and included with the letter a
copy of Metz's report. Stanley's counsel did not deny receiving the letter but, rather,
argued that exclusion was required because Linda had not formally supplemented her
discovery response. After a discussion in which the parties discussed a prior hearing
during which Linda's counsel stated that Metz was going to appraise the property, Stanley's
objection was overruled.

 In support of his proposition that the trial court erred, Stanley cites Rules of Civil
Procedure 194.2 and 193.5 as establishing Linda's duty to provide, and if necessary
supplement, discovery responses concerning her expert witnesses. He does not claim the
evidence unfairly surprised him. Rulings admitting or excluding evidence are committed
to the trial court's sound discretion. In re K. S., 76 S.W.3d 36, 39 (Tex. App.-Amarillo
2002, no pet.) citing Texas Dept. of Transp. v. Able, 35 S.W.3d 608, 617 (Tex. 2000). A
trial court abuses its discretion when it rules without regard to any guiding rules or
principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). 
Under this record, the trial court did not abuse its discretion in overruling Stanley's
objection. Stanley's eleventh point is overruled.

 In supporting his twelfth point contention that the trial court abused its discretion in
admitting Metz's testimony, Stanley contends he "was not, in fact, a qualified appraiser." 
Texas Rule of Evidence 702 governs expert opinion evidence. The rule permits testimony
by witnesses qualified as experts "by knowledge, skill, experience, training, or education."
The evidence here showed that the witness had been a licensed real estate agent for six
years at the time of trial. His work included helping home sellers decide what price to ask
for their homes. He admitted he was not a licensed appraiser, (7) and was careful not to
describe his valuation as an appraisal, but used the term "market analysis" instead.

 By its terms, Rule 702 does not require a witness to have any particular license to
be qualified as an expert. Rather, the rule allows experience to be shown by "knowledge,
skill, experience, training, or education." Because the qualifications are listed disjunctively,
proof of any of them can establish the requisite expertise. Again, a trial court has broad
discretion in determining the admissibility of expert evidence, and its decision will not be
reversed unless an abuse of that discretion is shown. Exxon Pipeline Co. v. Zwahr, 88
S.W.3d 623, 629 (Tex. 2002). Here, Metz testified without contradiction that he had six
years experience as a real estate agent, which included determining approximate values
of real property. That evidence is sufficient to support the trial court's finding that he was
qualified under Rule 702 to give opinion testimony on that question. Although Stanley
argues that "only an appraiser can render an expert opinion on values on the basis of
comparable values," the rule contains no such requirement. Stanley's twelfth point is
overruled.

 In his thirteenth and final point, Stanley argues that Metz's testimony was
erroneously admitted because its reliability could not be shown. His argument is based
upon statements in Guadalupe-Blanco River Authority v. Kraft, 77 S.W.3d 805 (Tex. 2002),
that a valuation fails to meet the reliability requirement of expert testimony if it is based
upon a "bald assurance" that the witness used comparable sales or sales that were not
truly comparable and a court should independently evaluate the underlying data in
determining if the opinion itself is reliable. Id. at 808.

 In advancing this argument, Stanley relies upon criticisms of Metz's method of
arriving at his valuation which were made by Stanley's expert, David Stanley. David
Stanley initially averred that he believed the square footage used by Metz was incorrect
because he found the house in question to have 1834 square feet of floor space while Metz
used a size of 1644 square feet, obtained from the house plans. In attempting to
distinguish the comparable properties used by Metz, Stanley pointed out that the
comparative properties were much older than the house at 200 S. 14th Street and several
of them had siding, while the 14th Street house had a brick veneer. On appeal, Stanley also
emphasizes the sale comparisons used by Metz occurred in 1999 and 2000, some two
years before trial. In that connection, he cites Holiday Inns Inc. v. State, 931 S.W.2d 614
(Tex. App.-Amarillo 1996, writ denied), for the proposition that the comparable sales used
by Metz were too remote in time to be properly used. He also argues that the comparables
were not in a similar area, and in support of that theory, cites Urban Renewal Agency v.
Georgetown Sav. and Loan Association, 509 S.W.2d 419, 422 (Tex. Civ. App.-Austin 1974,
writ ref'd n.r.e.).

 In considering whether the trial court abused its discretion in finding Metz's testimony
met Rule 702 requirements and in determining its credibility, it is helpful to compare that
testimony with that of David Stanley. David Stanley also testified that he formed his opinion
based on the value of other houses located in the "same area." He never defined what he
considered the "same area." Although Linda testified that the 200 S. 14th Street house was
located within 200 yards of a railroad switching yard, as one of his comparable properties,
David Stanley used a property located on F.M. 112 a few miles out of town and not near
any railroad track. We also note that the value of some of the comparable properties used
by David Stanley were appraisal values, not sale values. Moreover, he did not testify as
to the date of those appraisals.

 In Holiday Inns, we held a sale seven years after a condemnation was not
comparable for the purpose of determining a property's value. 931 S.W.2d at 623. 
However, we went on to note that the matter is generally left to the discretion of the trial
court and opined that "evidence of sales occurring within five years . . . may be
appropriate." Id. Here, the oldest comparable sale used by Metz was three years old, but
the record does not show the age of the appraisals used by David Stanley.

 While the exact distance between the property at issue and the comparables used
by Metz is not shown, he described them as "right across the railroad track," "across the
way," and "on Avenue P." In contrast, at least one of the properties used by David Stanley
was not in the same city. Suffice it to say, after reviewing the record, we cannot say the
trial court abused its discretion in admitting Metz's testimony and determining the weight
to be given it. Stanley's thirteenth point is overruled. 

 In summary, all of Stanley's points are overruled and the judgment of the trial court
is affirmed.

 John T. Boyd

 Senior Justice
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. 
Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2003). 
2. The court also found other work on the house was performed "primarily" by Linda's
relatives prior to their marriage.
3. Stanley cites McCann v. McCann, 22 S.W.3d 21, 22 (Tex. App.-Houston [14th Dist.]
2000, pet. denied), as authority for the proposition that improvements made during the
marriage are presumed to be from community funds. Linda has not pointed to any
evidence to overcome this presumption.
4. Her expert valued the property at $60,000 to $70,000 and Stanley's expert placed
a value of $95,000 on that property.
5. Wallace v. Wallace, 623 S.W.2d 723 (Tex. Civ. App.-Houston [1st Dist.] 1981, writ
dism'd).
6. Including appellant's income for 1997 and 1998, the two years previous to the years
recited only decreases Stanley's average income to $34,260 per annum.
7. See Texas Appraiser Licensing and Certification Act, Tex. Occ. Code Ann. Ch.
1103.001 et seq. (Vernon Pamp. 2003).