NO. 07-03-0105-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



JUNE 23, 2004



______________________________




SAMUEL ESCOBAR, JR., APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;



NO. 40,383-E; HONORABLE ABE LOPEZ, JUDGE



_______________________________




Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.



MEMORANDUM OPINION




 On June 14, 1999, appellant Sammy Ray Escobar pleaded guilty, pursuant to a plea
bargain, to an indictment alleging aggravated assault with a deadly weapon. After hearing
the evidence and finding that it substantiated appellant's guilt, the trial court, acting in
accordance with the plea bargain, deferred further proceedings without entering a finding
of guilt and placed appellant on community supervision for ten years. Later, the State filed
a motion to proceed with adjudication of guilt and, on January 16, 2003, the trial court
conducted a hearing on the motion. Appellant pleaded true to all seventeen of the
violations alleged by the State in its motion, and the State recommended a sentence
previously agreed to by appellant. The trial court adjudicated appellant guilty, then
followed the State's recommendation by imposing a sentence of 14 years confinement and
entering a deadly weapon finding. Appellant filed a pro se notice of appeal, and the trial
court appointed appellate counsel. In presenting this appeal, appellant's attorney has filed
an Anders brief in support of a motion to withdraw. See Anders v. California, 386 U.S. 738,
87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). We affirm and grant counsel's motion to withdraw. 

 In his brief, appellant's attorney certifies he diligently reviewed the record and
determined that, in his opinion, it reflects no reversible error or grounds upon which an
appeal can be predicated. Id. Thus, he concludes, the appeal is without merit and is
frivolous. Also in the brief, counsel candidly discusses why, under the controlling
authorities, there is no error in the court's judgment. See High v. State, 573 S.W.2d 807,
813 (Tex.Cr.App. 1978). Furthermore, counsel certifies he served a copy of the brief on
appellant and informed him that, in his view, the appeal is without merit. Attached to the
brief is a copy of a letter by which the attorney notified appellant of his right to review the
record and to file a response. 

 In compliance with the principles enunciated in Anders, counsel discusses four
potential areas for appeal. First, he explains that appellant failed to appeal issues related
to his original plea of guilty within 30 days of being placed on deferred adjudication. 
Additionally, according to counsel, even if appellant had timely filed the notice of appeal,
it would be inadequate to invoke this Court's jurisdiction because it does not comport with
the certification requirements of rule 25.2 of the Rules of Appellate Procedure. Second,
counsel points out that article 42.12 of the Code of Criminal Procedure provides that no
appeal may be taken from a determination to proceed with adjudication of guilt. In any
event, counsel continues, appellant pleaded true to each of the violations alleged by the
State in its motion to proceed with adjudication of guilt, and any one of those pleas would
be sufficient to support the trial court's decision to revoke. Third, while acknowledging that
appellant did not receive a separate punishment hearing, counsel notes that the record is
devoid of any objection to, or motion for new trial on the basis of, the trial court's failure to
conduct one. Finally, counsel refers to appellant's pro se notice of appeal by which
appellant appears to complain that his true plea at the adjudication hearing was involuntary
because he received ineffective assistance of counsel. Counsel concludes, however, that
this Court would be without jurisdiction to entertain the complaint. In sum, counsel
determines that the only portion of the proceeding over which this Court would have
jurisdiction is the punishment phase of the adjudication hearing. In that proceeding, in
response to the only potential error-the trial court's failure to conduct a separate
punishment hearing-appellant neglected to lodge an objection.

 Appellant filed a response claiming the trial court erred in failing to admonish him
(1) "regarding the legal consequences of a nolo contendere plea" (1) and (2) "of the
consequences of deferred adjudication"; and (3) by "adjudicating [him] guilty and
immediately sentenced [sic] him to (14) yrs [sic] confinement without giving [him]
opportunity [sic] to be heard on the issue of punishment and sentencing." (2) With his first
two complaints appellant maintains that the plea he entered on January 16, 2003 was
rendered involuntary by the trial court's failure to comply with the admonishment
requirements of article 26.13 of the Code of Criminal Procedure. See Tex. Code Crim.
Proc. Ann. art. 26.13(a) (Vernon Supp. 2004). (3) That article requires the trial court to advise
a criminal defendant of certain rights prior to accepting his guilty or nolo contendere plea. 
The trial court accepted appellant's guilty plea in June of 1999 during the original plea
hearing. Article 26.13 imposed no further duty upon the trial court during the subsequent
probation revocation in January of 2003. Furthermore, if appellant believed the trial court's
admonitions to him during the original plea proceeding failed to comport with the edicts of
article 26.13, the time for him to voice that objection was immediately following the
imposition of deferred adjudication. See Nix v. State, 65 S.W.3d 664, 667 (Tex.Cr.App.
2001). Thus, we cannot consider appellant's first and second complaints.

 With the last complaint in his response, appellant challenges the trial court's failure
to conduct a separate punishment hearing. While no appeal may be taken from a trial
court's determination to adjudicate guilt, one may be had to challenge the assessment of
punishment and pronouncement of sentence. Art. 42.12, § (5)(b); see Olowosuko v. State,
826 S.W.2d 940, 942 (Tex.Cr.App. 1992). Here, after appellant pleaded true to each of
the allegations contained in the State's motion to proceed with adjudication of guilt, the trial
court inquired of the State's recommendation. The State then detailed the plea bargain
agreement as to punishment, and appellant's attorney confirmed it. The court immediately
pronounced sentence, without giving appellant the opportunity to present evidence relevant
to punishment. In this, the trial court erred. See Vidaurri v. State, 49 S.W.3d 880, 886
(Tex.Cr.App. 2001). However, because appellant neither objected to the trial court's failure
to allow him to present punishment evidence, nor filed a motion for new trial complaining
of his inability to do so, he has waived such error. Id.

 By his notice of appeal, appellant advances an ineffective assistance of counsel
claim. Appellant contends his attorney had a "conflict of interest" and that there was an
"attorney-client break-down" which precipitated his decision to plead true to the allegations
contained in the State's motion to proceed with adjudication of guilt. Appellant appears to
assert that his plea was rendered involuntary by the ineffective assistance of counsel. 
Initially, we note that the voluntariness of a plea from a plea-bargained felony conviction
is not reviewable on appeal. Cooper v. State, 45 S.W.3d 77 (Tex.Cr.App. 2001). Next, we
acknowledge that in the context of an adjudication proceeding, we may only review
ineffective assistance claims as they pertain to post adjudication matters . See Olowosuko
826 S.W.2d at 942 (holding that article 42.12, section 5(b) expressly allows an appeal of
all proceedings after adjudication of guilt on original charge). Because appellant's
complaint pertains to matters that occurred before the trial court adjudicated him, we may
not consider it. 

 In addition to considering counsel's and appellant's complaints, we have made an
independent examination of the entire record to determine whether there are any arguable
grounds which might support the appeal. See Penson v. Ohio, 488 U.S. 75, 109 S.Ct.
346, 102 L.Ed.2d 300 (1988); Stafford v. State, 813 S.W.2d 503, 511 (Tex.Cr.App. 1991). 
The record illustrates that no appeal was taken within 30 days from the date of appellant's
guilty plea and the order to defer adjudication of his guilt. When the adjudication of an
accused's guilt is deferred and the individual is placed on community supervision,
complaints involving the original plea proceeding must be raised on appeal immediately
after deferred adjudication is imposed. Nix, 65 S.W.3d at 667. The only instance in which
they may thereafter be raised by direct appeal concerns error rendering the judgment void. 
Id. at 667. In this case, there is no evidence to indicate that any of the void judgment
exceptions apply. Thus, we would have no jurisdiction over any purported error arising
from or prior to the plea hearing. Further, appellant pleaded true to the violations of his
community supervision, and no appeal may be taken from a determination to proceed with
adjudication of guilt. Art. 42.12, § 5(b). The punishment assessed was also within the
range prescribed by law and agreed to by the parties. Tex. Pen. Code Ann. art. 12.33(a)
(Vernon 2003). Thus, having found no arguable grounds for appeal, we concur with
counsel's assessment that the appeal is without merit and frivolous. Currie v. State, 516
S.W.2d 684 (Tex.Cr.App. 1974). 

 Accordingly, counsel's motion to withdraw is granted and the judgment of the trial
court is affirmed.

 Don H. Reavis

 Justice

 

Do not publish. 


 


1. While appellant purports to challenge his plea of nolo contendere, we observe that
he, in fact, entered a guilty plea during the original plea proceedings. 
2. In the section of his response entitled Issues Presented for Review, appellant lists
an additional complaint urging that the trial court's failure to provide a separate punishment
hearing deprived him of due process. Apart from its mention in that section, however,
appellant neither refers to that claim elsewhere in the response nor presents arguments
and authority to support his position. Thus, we will not consider it. See Tex. R. App. P.
38.1(h). 
3. All references are to the Code of Criminal Procedure unless otherwise indicated. 
(Vernon Supp. 2004).


n"> Pointing to Linda's testimony in which she avers the note balance was "50," Stanley
argues that her testimony that the house had a market value of $60,000 was evidence that
"$10,000 [was] paid into the house by the community" and he is entitled to reimbursement
for half of that amount. However, as we mentioned above, under section 3.403 of the
Family Code, a marital estate is only entitled to a reimbursement claim when it makes an
economic contribution to property owned by another marital estate. Here, the S. 14th
Street house was community property and the debt on the house was also a community
debt, thus the payments on that debt were not an economic contribution to another marital
estate. Thus, no claim for economic contribution existed. Id. The trial court did not err in
the method it used for determining the community estate's equity at the time of the
marriage dissolution as a basis for making a division of that property. Stanley's second
point is overruled.

 In his ninth point, Stanley contends that because there was no evidence of the
amount of his retirement benefits, the trial court erred in using those benefits to offset his
claims for reimbursement. At trial, Linda testified that although she did not have any
specific information about the value of Stanley's retirement benefits accrued during the
marriage, she requested they be divided equally. Our examination of the record reveals
that during the closing arguments, the trial court inquired if there was any information
available on the value of Stanley's retirement benefits. Without objection, Stanley's
attorney replied that it was a defined benefits plan with no present value but the anticipated
benefits were $128 per month. As we noted above, in its findings, the trial court stated that
any claim for reimbursement to which Stanley was entitled was offset by the division of the
community estate and community debts, including his retirement benefits. 

 Stanley now argues that the division was an abuse of discretion because, without
any information as to the amount of the benefits, the trial court had no basis upon which
to make the finding. However, the record does not support that contention. As we have
noted, the trial court did have information on the amount of the benefits from Stanley's
attorney. Indeed, in considering whether the trial court abused its discretion in its decision,
it is important to note that Stanley failed to present evidence upon which the court could
determine the amount of his claim for economic contribution.

 In a related argument, Stanley takes the position that the trial court failed to comply
with Family Code section 6.711 which requires a court, upon proper request, to make
findings of fact and conclusions of law characterizing and valuing the party's assets,
liabilities, claims and offsets "on which disputed evidence has been presented." Stanley
particularly complains of the court's failure to place specific values upon his retirement
account and his occupancy of Linda's separate property house. However, there was no
evidence presented by either party on the value of Stanley's occupancy of the house and
the only information pertaining to the value of Stanley's retirement benefits was from his
counsel and was undisputed. Thus, there was no disputed evidence on those items that
would require resolution by a trial court finding.

 We note Stanley's citation to Roberts v. Roberts, 999 S.W.2d 424, 434 (Tex. App.-El
Paso 1999, no pet.), for the proposition that Linda bore the burden of presenting evidence
concerning the value of his retirement benefits. However, in relevant part, the Roberts
court's actual pronouncement was "[t]he Wallace (5) opinion states that it is the burden of the
parties to introduce evidence as to the values of the assets whereby a range of value can
be determined by the trial court." (Emphasis added). That comment does not support
Stanley's position that the burden was Linda's alone. Even so, no further analysis of the
Roberts opinion is necessary because the issue is now governed by section 6.711. Given
the limited evidence presented at trial by both parties, we cannot say that the trial court's
resolution of Stanley's claim for reimbursement and retirement benefits amounted to an
abuse of its discretion. Stanley's ninth point is overruled.

 In his tenth point, Stanley argues the trial court erred in its finding that Linda had
reduced unsecured community debts by $8,450 and used that finding as a basis for
denying reimbursement. The trial court's specific finding in its 13th finding of fact was that
Linda had reduced the $24,450 balance owed on community credit card debt on the date
the couple separated to a balance of approximately $16,000 owed on the date of trial. The
thrust of Stanley's argument is that any reduction in that debt cannot be used to deny his
claim for reimbursement because Linda's repayment would have been from community
funds.

 Supporting his argument, Stanley reasons that trial court finding 11 shows it used
the debt reduction to deny him reimbursement. Finding 11 reads:

 Any claim that [Stanley] may have for reimbursement for improvements made
to the 860 2nd Street property in Silsbee, Texas was offset by the benefit that
[Stanley] received by living in the house during the marriage of [Linda and
Stanley] and by the division of [the] community property and community
debts, including [Stanley's] retirement benefits.


We disagree that this finding shows the trial court improperly used the debt reduction to
deny reimbursement. Rather, it makes no mention of the debt reduction, but merely states
that Stanley's claim for reimbursement was considered by the court in making its property
division. We overrule Stanley's tenth point.

 Stanley is correct in his first point contention that the trial court erred in using his
occupancy at 860 N. 2nd Street as a basis to offset part of his claim for economic
contribution. Section 3.403(e) of the Family Code specifically disallows such use to offset
a claim for economic contribution. Even so, the error does not automatically require
reversal. We may only reverse if the error probably caused the rendition of an improper
judgment or probably prevented Stanley from presenting his case on appeal. Tex. R. App.
P. 44.1(a). Given the indefinite evidence supporting Stanley's claim for economic
contribution, and viewing the property division as a whole, we cannot say the error probably
caused the rendition of an improper judgment or prevented Stanley from presenting his
appeal. Stanley's first point is overruled.

 Stanley's second group of points concern the trial court's child support provisions. 
In his third point, he asserts the trial court erred in failing to provide a reduction in child
support when the older child turned 18. His only supporting argument is a statement that
there is a seven year age difference between the two children and the order should
"decrease to around $400/month" when the older child turns 18. His argument only
references the divorce decree provision setting support at $536 per month and cites no
authority supporting his contention that the omitted provision requires reversal.

 Texas courts have rejected identical arguments. See Ex parte Mathis, 822 S.W.2d
727, 732 (Tex. App.-Tyler 1991, no writ), citing Gross v. Gross, 808 S.W.2d 215, 219 (Tex.
App.-Houston [14th Dist.] 1991, no writ). When the first child turns 18, by virtue of Texas
Family Code section 156.401 (Vernon 2002), Stanley has the right to seek a modification
of his support obligation. Stanley's third point is overruled.

 Stanley's fourth, fifth, and sixth points are closely related. In point four, he assigns
error to the trial court's failure to state his net resources as required by section 154.130(b)
of the Family Code. In point five, he argues the trial court improperly deviated from the net
resource calculation guidelines, and in point six, he argues the court presumed he could
earn additional income. 

 Section 154.130 of the Family Code only requires findings on, inter alia, the monthly
net resources of the obligee and obligor if: 1) a party files a written request not later than
ten days after the hearing, 2) a party makes an oral request during the hearing, or 3) the
court orders an amount of child support that varies from the statutory percentage
guidelines. Tex. Fam. Code Ann. §154.130(a) (Vernon 2002).

 The hearing in this case was held on May 15, 2002. Stanley's request for findings
under section 154.130 was not filed until August 29, 2002, which was not within the
requisite statutory time period. He does not contend, and the record does not show, that
he made an oral request for findings during the hearing. Although Stanley additionally
argues the findings were required because the support ordered varied from the statutory
guidelines, without a finding on net resources, we cannot determine if there was a variance
from the percentage guidelines. Even so, we do note that the trial court found that
appellant's support obligations "should be based upon a gross yearly amount of $32,000." 
 Thus, in round figures and based upon the 2002 tax charts adopted pursuant to section
154.061(b) of the Family Code, appellant's net monthly resource would be $2,132. Under
the child support guidelines set out in section 154.125, his child support obligations would
be $533. The trial court's support order of $536 was within the purview of the statutory
guidelines. Stanley's fourth and fifth points are overruled.

 The gist of Stanley's sixth point is that the trial court erred in finding his support
should be based upon a gross annual income of $32,000 when the evidence showed that
his income at the time of trial was $29,738. He argues that this amounts to a finding that
he was intentionally underemployed, see Tex. Fam. Code Ann. §154.066 (Vernon 2002),
and points out that such a finding requires evidence of a design to reduce child support
payments. He cites and relies upon Dubois v. Dubois, 956 S.W.2d 607, 610 (Tex.
App.-Tyler 1997, no pet.), in which the court reversed a finding that the father's earning
potential was $2,820 per month when the only evidence on the question was that his
current income was less than $1,000 per month. Id. at 611. 

 Unlike Dubois, the court's finding here was based upon an average of actual
earnings, rather than earning potential. In its finding of fact number seven, the court found
Stanley's annual income for the three previous years was $35,859 in 1999, $37,457 in
2000, and $29,738 in 2001. The court's $32,000 recitation was well below his average
earnings of $34,351 (6) during those years. Thus, the $32,000 finding was not based upon
a determination of intentional underemployment, but upon the evidence of his actual
income, recognizing that Stanley's income varied, and giving appropriate weight to his
decreased earnings the previous year. The record does not show that the trial court
abused its discretion in making the finding. Stanley's sixth point is overruled.

 In his seventh and eighth points, Stanley asserts the trial court erred in not
considering Linda's net resources and failing to reduce his support obligations because of
those resources. He argues that the trial court's alleged failure violated Article 1, Section
3a of the Texas Constitution which prohibits the denial of equal protection on the basis of
gender. In support of that proposition, he cites and relies upon Ulrich v. Ulrich, 652 S.W.2d
503 (Tex. App.-Houston [1st Dist.] 1983, no writ) and Kish v. Kole, 874 S.W.2d 835, 837
(Tex. App.-Beaumont 1994, no writ). However, those cases do not support his proposition. 
For example, in Ulrich, the appellate court recognized that both parents have a continuing
duty to support the children but, after reviewing the assets and obligations of the parties,
opined that there was no constitutional or statutory violation and held the trial court acted
within its discretion in failing to order the mother to pay child support. Ulrich, 652 S.W.2d
at 506. Likewise, in Kish, the appellate court held that a trial court, after considering the
ability of both parents to contribute to their child's support, did not abuse its discretion in
failing to order the mother to pay child support. 

 The record does not support Stanley's argument that the trial court erred in setting
the amount of child support within the statutory guidelines and he has not presented any
challenge to the constitutionality of the statutes. Stanley's seventh and eighth points are
overruled.

 In his final group of points, Stanley challenges the admissibility of the testimony of
Linda's expert witness on the value of the real property. In doing so, he posits that the
expert's testimony should have been excluded because Linda did not timely supplement
her discovery responses (point 11), the witness was not qualified as an appraiser (point
12), and the reliability of the witness's testimony was not shown (point 13).

 When Linda called Bob Metz, the witness in question, to testify on the value of the
property, Stanley objected on the basis that Metz had not been included in the list of
witnesses contained in her discovery response. Linda's attorney responded that he had
informed Stanley's attorney of his intent to call the witness and included with the letter a
copy of Metz's report. Stanley's counsel did not deny receiving the letter but, rather,
argued that exclusion was required because Linda had not formally supplemented her
discovery response. After a discussion in which the parties discussed a prior hearing
during which Linda's counsel stated that Metz was going to appraise the property, Stanley's
objection was overruled.

 In support of his proposition that the trial court erred, Stanley cites Rules of Civil
Procedure 194.2 and 193.5 as establishing Linda's duty to provide, and if necessary
supplement, discovery responses concerning her expert witnesses. He does not claim the
evidence unfairly surprised him. Rulings admitting or excluding evidence are committed
to the trial court's sound discretion. In re K. S., 76 S.W.3d 36, 39 (Tex. App.-Amarillo
2002, no pet.) citing Texas Dept. of Transp. v. Able, 35 S.W.3d 608, 617 (Tex. 2000). A
trial court abuses its discretion when it rules without regard to any guiding rules or
principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). 
Under this record, the trial court did not abuse its discretion in overruling Stanley's
objection. Stanley's eleventh point is overruled.

 In supporting his twelfth point contention that the trial court abused its discretion in
admitting Metz's testimony, Stanley contends he "was not, in fact, a qualified appraiser." 
Texas Rule of Evidence 702 governs expert opinion evidence. The rule permits testimony
by witnesses qualified as experts "by knowledge, skill, experience, training, or education."
The evidence here showed that the witness had been a licensed real estate agent for six
years at the time of trial. His work included helping home sellers decide what price to ask
for their homes. He admitted he was not a licensed appraiser, (7) and was careful not to
describe his valuation as an appraisal, but used the term "market analysis" instead.

 By its terms, Rule 702 does not require a witness to have any particular license to
be qualified as an expert. Rather, the rule allows experience to be shown by "knowledge,
skill, experience, training, or education." Because the qualifications are listed disjunctively,
proof of any of them can establish the requisite expertise. Again, a trial court has broad
discretion in determining the admissibility of expert evidence, and its decision will not be
reversed unless an abuse of that discretion is shown. Exxon Pipeline Co. v. Zwahr, 88
S.W.3d 623, 629 (Tex. 2002). Here, Metz testified without contradiction that he had six
years experience as a real estate agent, which included determining approximate values
of real property. That evidence is sufficient to support the trial court's finding that he was
qualified under Rule 702 to give opinion testimony on that question. Although Stanley
argues that "only an appraiser can render an expert opinion on values on the basis of
comparable values," the rule contains no such requirement. Stanley's twelfth point is
overruled.

 In his thirteenth and final point, Stanley argues that Metz's testimony was
erroneously admitted because its reliability could not be shown. His argument is based
upon statements in Guadalupe-Blanco River Authority v. Kraft, 77 S.W.3d 805 (Tex. 2002),
that a valuation fails to meet the reliability requirement of expert testimony if it is based
upon a "bald assurance" that the witness used comparable sales or sales that were not
truly comparable and a court should independently evaluate the underlying data in
determining if the opinion itself is reliable. Id. at 808.

 In advancing this argument, Stanley relies upon criticisms of Metz's method of
arriving at his valuation which were made by Stanley's expert, David Stanley. David
Stanley initially averred that he believed the square footage used by Metz was incorrect
because he found the house in question to have 1834 square feet of floor space while Metz
used a size of 1644 square feet, obtained from the house plans. In attempting to
distinguish the comparable properties used by Metz, Stanley pointed out that the
comparative properties were much older than the house at 200 S. 14th Street and several
of them had siding, while the 14th Street house had a brick veneer. On appeal, Stanley also
emphasizes the sale comparisons used by Metz occurred in 1999 and 2000, some two
years before trial. In that connection, he cites Holiday Inns Inc. v. State, 931 S.W.2d 614
(Tex. App.-Amarillo 1996, writ denied), for the proposition that the comparable sales used
by Metz were too remote in time to be properly used. He also argues that the comparables
were not in a similar area, and in support of that theory, cites Urban Renewal Agency v.
Georgetown Sav. and Loan Association, 509 S.W.2d 419, 422 (Tex. Civ. App.-Austin 1974,
writ ref'd n.r.e.).

 In considering whether the trial court abused its discretion in finding Metz's testimony
met Rule 702 requirements and in determining its credibility, it is helpful to compare that
testimony with that of David Stanley. David Stanley also testified that he formed his opinion
based on the value of other houses located in the "same area." He never defined what he
considered the "same area." Although Linda testified that the 200 S. 14th Street house was
located within 200 yards of a railroad switching yard, as one of his comparable properties,
David Stanley used a property located on F.M. 112 a few miles out of town and not near
any railroad track. We also note that the value of some of the comparable properties used
by David Stanley were appraisal values, not sale values. Moreover, he did not testify as
to the date of those appraisals.

 In Holiday Inns, we held a sale seven years after a condemnation was not
comparable for the purpose of determining a property's value. 931 S.W.2d at 623. 
However, we went on to note that the matter is generally left to the discretion of the trial
court and opined that "evidence of sales occurring within five years . . . may be
appropriate." Id. Here, the oldest comparable sale used by Metz was three years old, but
the record does not show the age of the appraisals used by David Stanley.

 While the exact distance between the property at issue and the comparables used
by Metz is not shown, he described them as "right across the railroad track," "across the
way," and "on Avenue P." In contrast, at least one of the properties used by David Stanley
was not in the same city. Suffice it to say, after reviewing the record, we cannot say the
trial court abused its discretion in admitting Metz's testimony and determining the weight
to be given it. Stanley's thirteenth point is overruled. 

 In summary, all of Stanley's points are overruled and the judgment of the trial court
is affirmed.

 John T. Boyd

 Senior Justice
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. 
Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2003). 
2. The court also found other work on the house was performed "primarily" by Linda's
relatives prior to their marriage.
3. Stanley cites McCann v. McCann, 22 S.W.3d 21, 22 (Tex. App.-Houston [14th Dist.]
2000, pet. denied), as authority for the proposition that improvements made during the
marriage are presumed to be from community funds. Linda has not pointed to any
evidence to overcome this presumption.
4. Her expert valued the property at $60,000 to $70,000 and Stanley's expert placed
a value of $95,000 on that property.
5. Wallace v. Wallace, 623 S.W.2d 723 (Tex. Civ. App.-Houston [1st Dist.] 1981, writ
dism'd).
6. Including appellant's income for 1997 and 1998, the two years previous to the years
recited only decreases Stanley's average income to $34,260 per annum.
7. See Texas Appraiser Licensing and Certification Act, Tex. Occ. Code Ann. Ch.
1103.001 et seq. (Vernon Pamp. 2003).