NUMBER 13-07-00758-CV


COURT OF APPEALS
 


THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


ERIC J. ROMERO, PH.D., Appellant,


v.


ODRA JULIETA ZAPIEN A/K/A

ODRA J. TORT, Appellee.

 
 

On appeal from the County Court at Law No. 1

 of Hidalgo County, Texas.

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Yañez and Garza

 Memorandum Opinion by Chief Justice Valdez


 This appeal pertains to various orders involving the divorce of appellant, Eric J.
Romero, Ph.D., and Odra J. Zapien a/k/a Odra J. Tort, and various child custody issues. 
By five issues, appellant, advancing pro se, contends that the trial court: (1) abused its
discretion in awarding appellee excessive child support in contravention of the family code;
(2) violated appellant's constitutional rights regarding possession and visitation with the
couple's only child; (3) treated appellant unfairly in ordering him to pay appellee's
attorney's fees; (4) abused its discretion in removing a geographic restriction pertaining to
appellee's possession of the couple's child, even though appellant had requested a jury
trial on this issue; and (5) treated him unfairly and delayed hearings on the various
motions, which "amplified the damage that Mrs. Tort has done to the parent/child
relationship." We affirm, in part, and reverse and remand, in part.

I. Background

 Appellant and appellee were married on May 11, 2001. While married, appellant
and appellee had one child, a daughter. On November 22, 2002, appellant filed his original
petition for divorce in Hidalgo County, Texas. At the time of the divorce, both parties
resided in Edinburg, Texas. In addition to his divorce petition, appellant requested a
temporary restraining order preventing appellee from relocating and attached an affidavit
to his divorce petition, stating that he had reason to suspect that appellee would relocate
to El Paso County, where her parents live.

 After a hearing, the trial court granted appellant's request for a divorce and entered
a final decree of divorce, which named appellant and appellee joint managing conservators
and granted appellee the exclusive right "to establish the primary residence of the child
within Hidalgo County, Texas." The trial court also imposed a geographic restriction, which
prohibited appellee from relocating from Hidalgo County. The restriction provided as
follows:

 ODRA JULIETA ZAPIEN will not relocate from Hidalgo County, Texas,
unless she seeks the authority of this Court or ERIC ROMERO relocates
from Hidalgo County, Texas, in which case, [ODRA] JULIETA ZAPIEN,
Respondent, and her daughter may relocate to any place in the world without
seeking the authority of this Court. Upon ERIC ROMERO relocating more
than 100 miles away from ODRA JULIETA ZAPIEN, the standard visitation
as outlined in the Texas Family Code Section 153.313- Parents Who
Reside More Than 100 Miles Apart will apply. 


(Emphasis in original.) The final divorce decree also, among other things: (1) set forth
standard visitation for both appellant and appellee; (2) ordered appellant to pay $1,073 per
month in child support to appellee; and (3) ordered appellant to provide health insurance
for the minor child and that the parties evenly split heath care costs not covered by
insurance.

 While he was living in Edinburg, appellant was employed as a professor at the
University of Texas-Pan American. At some point after the divorce decree was entered,
appellant voluntarily chose to move to Florida to take a more lucrative job. However, while
he was living in Florida, appellant decided that he wished to move back to Edinburg to be
closer to his daughter. Appellant tendered his resignation to his employer in Florida and
moved back to Edinburg without a job.

 On July 23, 2007, appellant, advancing pro se, filed an original petition to modify the
divorce decree. Appellant alleged that his child support and health insurance obligations
pertaining to the couple's child should be modified because he had no health insurance
and no income, given that he was unemployed. Appellant requested that: (1) appellee
provide health insurance for the child; (2) he pay for half of the child's private school tuition 
directly to the school as child support; (3) appellee be ordered to keep the child in private
school; and (4) his child support obligations be reduced to that of a minimum wage worker.

 The trial court set a hearing on appellant's motion to modify for September 18, 2007;
however, this setting was reset because appellee's attorney apparently was not notified of
the hearing. In the meantime, appellee filed a motion for enforcement of child support by
contempt on October 23, 2007. In this filing, appellee alleged that appellant had not paid
his court-ordered child support of $1,073 for the months of July 2007 to October 2007, and
that appellant had violated the divorce decree by allowing health insurance coverage for
the child to lapse. Appellee requested that the trial court award her: (1) $4,292 in child
support arrearages; (2) $399 in insurance premiums; (3) $595 in unpaid medical
reimbursements; and (4) attorney's fees and court costs.

 On November 7, 2007, the trial court conducted a hearing on appellee's motion for
enforcement. After hearing arguments from both parties and appellee's testimony, the trial
court recessed without making a decision. Later, on November 16, 2007, appellant filed
a pro se amended motion to modify the divorce decree requesting that he be granted "joint
physical possession" of his daughter. In December 2007, the trial court conducted two
hearings on appellant's original motion to modify and appellee's motion for enforcement. 
On December 26, 2007, the trial court entered an order holding appellant in contempt for
failing to pay his child support. The trial court found that appellant had failed to pay any
child support from July 1, 2007 to December 1, 2007, and that he was in arrears for
$6,438. The $6,438 in arrearages was awarded to appellee in addition to $950 in
attorney's fees and court costs and $437.50 in health insurance expenses corresponding
to the relevant time period. The trial court did, however, grant, in part, appellant's motion
to modify and reduced his child support payments to $575 per month and ordered him to
pay appellee for any health insurance premiums that appellee's employer did not cover. (1) 

 The trial court conducted a hearing on appellant's pro se amended motion to modify
on February 1, 2008. At this hearing, appellant, still advancing pro se, argued his
entitlement to joint physical possession of the child and alleged that appellee may violate 
the geographic restriction in the divorce decree by moving to El Paso in the near future. 
Among the witnesses testifying at this hearing was appellee's counsel, who stated that he
bills at $175 per hour; he had done fifteen hours of work on the case; and he had done
family law for seventeen years in proving up entitlement to $4,125 in attorney's fees. On
February 27, 2008, the trial court entered an order denying appellant's pro se amended
motion to modify requesting joint physical possession of the child, but some modifications
were made to the visitation schedule. (2) The trial court also granted appellant full access to
determining the education of the child and encouraged the parties to leave the child in
private school because she was thriving. With respect to appellant's assertion regarding
the geographic restriction, the trial court declined to lift the restriction at that time. 
Moreover, the trial court awarded appellee's counsel $1,000 in attorney's fees. 

 On March 25, 2008, appellant filed a pro se motion for new trial, which was
overruled by operation of law. See Tex. R. Civ. P. 329b(c). On July 30, 2008, appellee
filed a petition to modify the parent-child relationship, seeking to lift the geographic
restriction contained in the divorce decree and modify appellant's visitation rights to those
associated with parties residing more than 100 miles apart. Appellee argued that the
geographic restriction had already been voided when appellant chose to move to Florida
"for almost a year." Appellant filed a pro se answer to appellee's motion to modify and a
counter-petition to modify the parent-child relationship. In this filing, appellant requested
a jury trial, objected to the lifting of the geographic restriction, and requested that he be
named primary managing conservator with full custody of the child. 

 Later, on August 26, 2008, appellant, now represented by counsel, filed a motion
for enforcement, asking that he be named the primary managing conservator for his
daughter and requesting additional visitation with the child and that appellee be held in
contempt for moving to El Paso with the child. Appellant filed his first amended motion for
enforcement on October 9, 2008, asserting the same arguments made in his original
motion for enforcement and alleging that appellee allowed for the health insurance
covering the child to lapse and that he incurred $2,978.63 in medical expenses treating the
child for a hernia.

 The trial court conducted hearings on all the remaining pending
motions--appellant's motion for enforcement and appellee's petition to modify the parent-child relationship. After hearing testimony from both appellant and appellee, the trial court 
entered an order on August 18, 2009. In this order, the trial court noted that "[a] jury was
waived for the motion for enforcement, and all questions of fact and of law were submitted
to the Court." Moreover, the order recited that appellee was in contempt for: (1) leaving
Hidalgo County without court authorization; (2) denying access of the child to appellant; (3)
failing to pay her share of the medical expenses associated with the child; and (4) failing
to provide health insurance for the child for five months once she relocated to El Paso. As
a result of her violations, the trial court assessed a civil fine of $500 to be paid into the
Court's registry and $1,500 in attorney's fees to be paid to appellant's attorney and ordered
appellee to reimburse appellant $437.50 for failing to provide health insurance for the child. 
The trial court awarded appellant a $1,489.32 child-support credit to compensate him for
one-half of the medical expenses incurred as a result of the child's hernia surgery. 
Additionally, appellant was awarded an additional week of visitation with the child during
the Thanksgiving or Christmas holidays to make up for the time that appellee denied
appellant access to the child. Finally, the trial court lifted the geographic restriction and
revised the visitation schedule according to section 153.313 of the family code, which
outlines visitation for parties residing more than 100 miles apart. See Tex. Fam. Code Ann.
§ 153.313 (Vernon Supp. 2009). 

 Appellant, now advancing pro se, filed numerous notices of appeal, challenging the
trial court's various orders. Appellant also filed several pro se appellate briefs detailing his
various arguments. After reviewing each of the briefs, we will analyze appellant's most
recent brief filed on March 4, 2010, which appears to encompass all of the arguments
made in previous filings. (3) 

II. Child Support

 By his first issue, appellant argues that the trial court abused its discretion in
awarding appellee back child support for the period of time in which appellant quit his job
in Florida until the December 2007 hearings. Specifically, appellant asserts that because
he was unemployed during the relevant time period, he should only have been required to
pay child support premised on a minimum wage finding, rather than a continuation of the
$1,073 per month in child support that had been ordered in the divorce decree. Appellant
also alleges that the trial court made a mathematical error in calculating the reduction of
his child support from $1,073 to $575 and abused its discretion in requiring him to pay a
portion of the child's private school tuition. Appellee counters by arguing that the trial
court's child support award was based on appellant's earning potential and that appellant
was intentionally underemployed. Appellee further argues that the evidence adduced at
the hearing supports the trial court's decision regarding child support. 

A. Standard of Review and Applicable Law

 An order regarding child support will not be overturned unless the trial court clearly
abused its discretion. Rodriguez v. Rodriguez, 860 S.W.2d 414, 415 (Tex. 1993); Worford
v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990); see Office of the Att'y Gen. v. Buhrle, 210
S.W.3d 714, 717 (Tex. App.-Corpus Christi 2006, pet. denied); see also Smith v. Smith,
143 S.W.3d 206, 217 (Tex. App.-Waco 2004, no pet.). The test for abuse of discretion
is whether the trial court acted without reference to any guiding rules or principles, or, in
other words, whether the act was arbitrary or unreasonable. See Worford, 801 S.W.2d at
109; see also Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.
1985). A trial court's failure to analyze or apply the law correctly constitutes an abuse of
discretion. Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992). A trial court is given
broad discretion in setting child support payments and also in decreasing or increasing
such payments. See In re D.S., 76 S.W.3d 512, 520 (Tex. App.-Houston [14th Dist.] 2002,
no pet.). Furthermore, we view the evidence in the light most favorable to the trial court's
action, indulging every presumption in favor of the judgment. See Zorilla v. Wahid, 83
S.W.3d 247, 253 (Tex. App.-Corpus Christi 2002, no pet.); see also Warren v. Warren, No.
13-05-00429-CV, 2008 Tex. App. LEXIS 1859, at *5 (Tex. App.-Corpus Christi Mar. 13,
2008, no pet.) (mem. op.).

 The trial court may order either or both parents to support a child in the manner
specified by the order. Tex. Fam. Code Ann. § 154.001 (Vernon 2008). In other words,
each party has a duty to support his or her minor child. Id. § 151.001(b) (Vernon 2008);
see Villasenor v. Villasenor, 911 S.W.2d 411, 419 (Tex. App.-San Antonio 1995, no writ).
Under section 154.001, a trial court must order payment of child support "once financial
need and ability to pay [are] established." Orsak v. Orsak, 642 S.W.2d 566, 567 (Tex.
App.-Dallas 1982, no writ) (citing Grandinetti v. Grandinetti, 600 S.W.2d 371, 372 (Tex.
Civ. App.-Houston [14th Dist.] 1980, no writ)). For purposes of determining child support
liability, the trial court shall calculate net resources, including all wage and salary income
and other compensation for personal services, interest, dividends and royalty income,
self-employment income, net rental income, and all other income actually being received.
Tex. Fam. Code Ann. § 154.062(a), (b) (Vernon Supp. 2009). Further, there must be some
evidence in the record of a substantive and probative character of net resources in order
for this duty to be discharged. Newberry v. Bohn-Newberry, 146 S.W.3d 233, 236 (Tex.
App.-Houston [14th Dist.] 2004, no pet.).

 Moreover, in Garner v. Garner, the Dallas Court of Appeals noted the following with
respect to the calculation of child support:

 Chapter 154 of the Texas Family Code establishes a multiple-step process
for determining the amount of child support. The trial court must first
determine the parties' gross income, net income, and monthly net resources. 
And, each party is required to furnish information sufficient to identify the
party's net resources and ability to pay support, such as production of copies
of income tax returns, financial statements, and pay stubs. After determining
the amount of net resources, the trial court must decide whether to apply the
child support guidelines or whether application of the guidelines would be
unjust or inappropriate. Importantly, a parent's child support obligation is not
limited to that parent's ability to pay from current earnings; rather it extends
to his or her financial ability to pay from any and all available sources.


See 200 S.W.3d 303, 306 (Tex. App.-Dallas 2006, no pet.); see also Santillan v. Campos,
No. 04-08-00904-CV, 2009 Tex. App. LEXIS 8301, at **8-9 (Tex. App.-San Antonio Oct.
21, 2009, no pet. h.) (mem. op.). A court may, within its broad discretion, modify an order
for child support if the "circumstances of the child or a person affected by the order have
materially and substantially changed." Tex. Fam. Code Ann. § 156.401(a) (Vernon 2008).

B. Discussion

 The record contains appellant's 2005 IRS tax return, which reflects that appellant
had an adjusted gross income of $92,828 around the time the couple got divorced. Using
this figure, the trial court determined that appellant should pay appellee $1,073 per month
in child support. (4) Shortly thereafter, appellant voluntarily moved to Florida to take a more
lucrative job, which, according to his 2006 IRS tax return, provided appellant with an
adjusted gross income of $138,456. Later, appellant chose to return to the Rio Grande
Valley to be closer to his daughter. Appellant submitted a letter of resignation to his
employer in Florida and subsequently moved back to Edinburg, Texas, without a job. 
Appellant testified that he applied for numerous jobs upon arriving in Edinburg; however,
he was only able to secure an online teaching position, which, as appellant admitted, did
not amount to steady employment. (5) Once he quit his job in Florida, appellant ceased
paying child support and filed a motion to modify his child support obligations, mistakenly
assuming that the filing of his motion to modify relieved him of the obligation of paying his
child support obligations. 

 "If the actual income of the obligor is significantly less than what the obligor could
earn because of intentional unemployment or underemployment, the court may apply the
support guidelines to the earning potential of the obligor." Tex. Fam. Code Ann. § 154.066
(Vernon 2008); see Garner, 200 S.W.3d at 306 ("A child support obligor qualified to obtain
gainful employment may not avoid his support obligation by voluntarily remaining
unemployed or underemployed."). "In effect, the court can prevent a parent from evading
child support by treating the parent's earning potential as an element of his net resources." 
Dubois v. Dubois, 956 S.W.2d 607, 610 (Tex. App.-Tyler 1997, no pet.). Though the
family code does not define "underemployment" or "unemployed" with respect to section
154.066, Texas courts have traditionally held that "the reduction in income must have been
effectuated with a design to reduce the child support payments." Id. (citing Starck v.
Nelson, 878 S.W.2d 302, 307 n.10 (Tex. App.-Corpus Christi 1994, no writ); Woodall v.
Woodall, 837 S.W.2d 856, 858 (Tex. App.-Houston [14th Dist.] 1992, no writ); Casterline
v. Burden, 560 S.W.2d 499, 501 (Tex. Civ. App.-Dallas 1977, no writ); McSween v.
McSween, 472 S.W.2d 307, 310 (Tex. Civ. App.-San Antonio 1971, no writ)). 

 In making a finding of intentional underemployment or unemployment, there must
be evidence in the record that a parent reduced his income for the purpose of decreasing
his child support payment. See Zorilla, 83 S.W.3d at 253; see also Colvin v. Colvin, No.
13-03-00034-CV, 2006 Tex. App. LEXIS 4496, at *15 (Tex. App.-Corpus Christi May 25,
2006, pet. denied) (mem. op.). The requisite intent, or lack thereof, to be underemployed
or unemployed for the purpose of determining an award of child support may be inferred
from such circumstances as the parent's education, economic adversities, business
reversals, business background, and earning potential. See Zorilla, 83 S.W.3d at 253; see
also Colvin, 2006 Tex. App. LEXIS 4496, at *15. However, "[t]here is no presumption that
simply because a parent is no longer as lucratively employed as he was during his
marriage, he is intentionally underemployed or unemployed." Dubois, 956 S.W.2d at 610. 
Furthermore, "we must be cognizant of a parent's right as a citizen to the pursuit of
happiness and to the freedom to live where he chooses . . . . And it is axiomatic that
although a parent's financial support of his children is of prime importance, so too is his
physical presence in their lives." Id. Once the parent who is obligated to pay child support
has offered proof of his current wages, the other parent bears the burden to show that the
obligor is intentionally underemployed or unemployed. Zorilla, 83 S.W.3d at 253. 

 Appellant argues that, in moving back to Edinburg, he had spent the majority of his
savings, and, because he had no job and no income, he could no longer pay his child
support obligations. (6) At the hearing on his motion to modify, appellant admitted that he
made a mistake in failing to make any child support payments during the relevant time
period, but that his mistake should be forgiven because he is not an attorney who is
familiar with the child support laws. This argument is not persuasive because pro se
litigants are held to the same standards as licensed attorneys and must comply with
applicable laws and rules of procedure. See Green v. Kaposta, 152 S.W.3d 839, 841 (Tex.
App.-Dallas 2005, no pet.); see also Siddiqui v. Siddiqui, No. 14-07-00235-CV, 2009 Tex.
App. LEXIS 1443, at *4 (Tex. App.-Houston [14th Dist.] Mar. 3, 2009, pet. denied) (mem.
op.) ("While we have compassion for the plight of the pro se litigant attempting to follow the
rule of legal procedure and substantive laws, and therefore construe pro se pleadings and
briefs liberally, we must still hold appellant to the same standard as a licensed attorney,
requiring that he follow those same rules and laws . . . . To do otherwise would give a pro
se litigant an unfair advantage over a litigant represented by counsel."); Sears v. Highlands
Ins. Co., No. 13-97-135-CV, 1998 Tex. App. LEXIS 3810, at *4 (Tex. App.-Corpus Christi
June 25, 1998, no pet.) (mem. op., not designated for publication) ("Ignorance or mistake
of the law is no excuse.") (citing Pollard v. Steffens, 161 Tex. 594, 343 S.W.2d 234, 237
(1961)). 

 Appellant also argued that it was not logical for him to sacrifice his lucrative earnings
in Florida to move back to Edinburg for the sole purpose of reducing his child support
payments. However, the trial court, after conducting a hearing on this matter and hearing
appellant's justifications for failing to pay child support to appellee for the relevant time
period, held appellant in contempt for failing to make his $1,073 child support payments
from July 1, 2007 to December 1, 2007. See Garner, 200 S.W.3d at 308 ("As the fact
finder, the trial court had the discretion to disbelieve appellant's testimony and was not
required to accept appellant's evidence of his income and net resources as true . . . . 
Because the trier of fact is in a better position to determine the candor, demeanor, and
credibility of the witnesses, we will not substitute our judgment for that of the trial court.")
(citing Dishner v. Huitt-Zollars, Inc., 162 S.W.3d 370, 378 (Tex. App.-Dallas 2005, no pet.);
Friermood v. Friermood, 25 S.W.3d 758, 760 (Tex. App.-Houston [14th Dist.] 2000, no
pet.)). Accordingly, on December, 26, 2007, the trial court ordered appellant to pay
appellee $6,438 in back child support, $950 in attorney's fees, and $437.50 for expenses
associated with the child's health insurance coverage. (7) 

 Based on the foregoing, we cannot say that the trial court abused its discretion in
awarding appellee back child support. It is clear to this Court that appellant voluntarily
resigned from his lucrative position in Florida without securing a job in Edinburg. Contrary
to his assertions, appellant, an individual with a Ph.D. in management, a former business
professor at the University of Texas-Pan American, and someone who has earned more
than $90,000 per year in the recent past, has the potential to earn much more than
minimum wage. Moreover, appellant testified that he had a substantial amount of money
in his savings account at the time of his move from Florida, which could have been used
to pay his child support obligations before it was diminished, and the record does not
include any evidence of appellant's alleged efforts to obtain steady employment when he
moved back to Edinburg. Furthermore, we find it noteworthy that appellant failed to make
any child support payments, much less the required $1,073 in child support, to appellee
for a period of approximately six months, even though he had some funds that could have
been used to pay. Such a failure to pay child support cannot possibly be in the best
interest of the child. As a result, we conclude that the trial court's application of section
154.066 of the family code to this situation was not erroneous; thus, the trial court did not
abuse its discretion in finding that appellant was intentionally underemployed or
unemployed. See Tex. Fam. Code Ann. § 154.066; Garner, 200 S.W.3d at 308; Zorilla, 83
S.W.3d at 253; see also Colvin, 2006 Tex. App. LEXIS 4496, at *15. 

 After the trial court held appellant in contempt for failing to pay child support from
July 2007 to December 2007, the trial court reduced appellant's child support obligations
from $1,073 to $575 per month. Appellant argues that this calculation is erroneous
because the trial judge indicated in open court that he intended to reduce appellant's child
support obligations by one-half. Thus, one-half of $1,073 constitutes $536.50, rather than
the $575 amount indicated by the trial judge. Appellant further argues that the $575 figure
amounts to more than 32% of his net income and, therefore, violates section 154.062 of
the family code. See Tex. Fam. Code Ann. § 154.062. We do not find appellant's
argument that the trial court's reduction of his child support payments constitutes more
than 32% of his net income or net resources to be persuasive because the record does not
contain competent evidence of appellant's net income or net resources at the time of the
trial court's decision. Without such information, we cannot determine that appellant's net
income at the time of the trial court's decision amounted to more than 32% of appellant's
net income. (8)

 With respect to appellant's first argument regarding the trial court's calculation of
child support in the December 26, 2007 order, we reference the following statements made
by the trial court at the hearing on appellant's motion to modify and appellee's motion for
enforcement:

 THE COURT: All right. I am going to make a [determination], Mr.
Romero, in the following: You do owe child support of
[$]6,438 as of July through December. You are
responsible for that amount. That is $1[,]073 per
month.


 Now, I could make a determination that you
should continue paying the same amount of income--I
mean child support because you have the ability to earn
that type of income, but I am not going to make that
determination. I am going to decrease your child
support in half. You will be responsible as of today to
pay the amount of $575 child support as of today, but
you are responsible on [sic] paying the $6,438.


(Emphasis added.) 

 A judgment or order that is rendered in writing and signed by the trial judge becomes
the official judgment of the court. See Harrington v. Harrington, 742 S.W.2d 722, 724 (Tex.
App.-Houston [1st Dist.] 1987, no writ). "Recitals in a judgment or signed order of the
court thus control over conflicting recitals in the record." Capital Fin. & Commerce AG v.
Sinopec Overseas Oil & Gas, Ltd., 260 S.W.3d 67, 85 n.21 (Tex. App.-Houston [1st Dist.]
2008, no pet.); see In re JDN Real Estate-McKinney, L.P., 211 S.W.3d 907, 914 n.3 (Tex.
App.-Dallas 2006, orig. proceeding) (holding that a written order controlled over conflicting
oral pronouncement); see also In re Marriage of Ellis, No. 06-08-00012-CV, 2008 Tex. App.
LEXIS 6289, at *8 (Tex. App.-Texarkana Aug. 19, 2008, no pet.) (mem. op.) (citing In re
K.M.B., 148 S.W.3d 618, 622 (Tex. App.-Houston [14th Dist.] 2004, no pet.)). Here, the
trial court announced that appellant's child support should be $575 per month, and the trial
court's written order reflects the same amount. Cf. Keim v. Anderson, 943 S.W.2d 938,
946 (Tex. App.-El Paso 1997, no writ) (stating that, when the record reflects a clerical
variance between the judgment announced in open court and the judgment which the trial
judge eventually signed, the appellate court can modify the judgment to correct the
mistake). Appellant bases his entire argument regarding the alleged erroneous child
support calculation on the trial court's oral pronouncements in open court, which as we
have noted above, are of less significance than trial court's written order. 

 In any event, we believe that the trial court's announcement of a specific amount of
child support is more significant than the generalized statement that appellant's child
support was going to be decreased in half. See, e.g., Tex. Gov't Code Ann. § 311.026
(Vernon 2005) (providing that, when analyzing conflicts between general and specific
provisions in statutes, the special provision prevails as an exception to the general
provision). We surmise that the trial court's usage of the terms "decrease . . . child support
in half" was merely to approximate the reduction in appellant's child support. By arguing
that the trial court's calculation of appellant's child support did not exactly equal one half
of the original child support obligation, we cannot say that the trial court clearly abused its
discretion so as to compel us to modify the trial court's child support order.

 Appellant's final argument regarding the trial court's child support award pertains to
an additional child support award to appellee to be used to enroll the child in private school. 
Specifically, appellant complains about the part of the trial court's order requiring him to
pay one-half of the private school tuition for the child in the event that appellee could not
pay the tuition and demonstrated to the trial court her inability to pay. The crux of this
argument, as we can tell, is that appellant complains that appellee allegedly never
requested such relief in the trial court and that the award violates several provisions of the
family code. (9) See Tex. Fam. Code Ann. §§154.062, .066, .125 (Vernon Supp. 2009).

 A court may order additional child support depending on the income of the parties
and the proven needs of the children. Id. § 154.126(a) (Vernon 2008). An award of
support in excess of the statutory guidelines must be based on the unmet needs of the
child. See Rodriguez v. Rodriguez, 860 S.W.2d 414, 417 (Tex. 1993); see also In re
J.A.H., No. 08-07-00245-CV, 2009 Tex. App. LEXIS 8876, at *10 (Tex. App.-El Paso Nov.
18, 2009, no pet.) (mem. op.). The needs of a child are not limited to "the bare necessities
of life." Rodriguez, 860 S.W.2d at 417 n.3; Thomas v. Thomas, 895 S.W.2d 895, 896 (Tex.
App.-Waco 1995, writ denied). The needs of the child and the awarding of additional child
support are reviewed under an abuse of discretion standard on a case-by-case basis. See
Scott v. Younts, 926 S.W.2d 415, 420 (Tex. App.-Corpus Christi 1996, writ denied); see
also In re J.A.H., 2009 Tex. App. LEXIS 8876, at *11.

 Here, appellee testified that she and her current husband had fallen on hard times
and likely were not able to afford to pay her share of the child's monthly private school
tuition of $400. The record contains IRS tax returns for the years 2006 and 2007, filed
jointly by appellee and her current husband. The tax returns reveal that appellee had an
adjusted gross income for 2006 and 2007 of $30,684 and $18,397, respectively. In
addition, appellee provided the trial court with a list of the family's expenses, which added
up to $4,565 per month. On the other hand, appellant did not provide the trial court with
any documentation of his net resources at the time the additional child support was
ordered. Moreover, the dispute regarding the child's education arose when appellee
indicated that she may no longer be able to pay for the child's private school education and
that she intended to enroll the child in a local public school. Appellant objected to the
child's enrollment in the public school and insisted that the child remain enrolled in the
private school, even though appellee testified that she may not be able to afford to do so. (10) 
Upon an oral motion made by appellee, the trial court ordered that the child remain in the
private school and that appellee pay for the tuition, presumably using the $575 in child
support received from appellant. However, the trial court also included a provision in its
order stating that, in the event that appellee cannot afford to pay the private school tuition,
she is to notify appellant and the trial court of her inability to do so and, after a hearing, the
trial court may order appellant to pay, in addition to his child support obligations, 50% of
the private school tuition.

 On appeal, appellant cites to various provisions of the family code that were
apparently violated; however, he does not explain exactly how these provisions were
violated. See Tex. R. App. P. 38.1(i). In fact, section 154.123 of the family code provides
that the trial court may consider, among other things, "special or extraordinary educational"
expenses of the child when calculating child support payments, which would include private
school tuition for children. Tex. Fam. Code Ann. § 154.123(b)(13) (Vernon 2008). 
Furthermore, the trial court's order regarding the additional child support is contingent upon
the trial court's finding that appellee cannot afford to enroll the child in private school, a
situation that, based on the record, does not appear to have happened. As such, it does
not appear to this Court that appellant's argument pertaining to the private school tuition
is ripe for review. (11) See Waco Indep. Sch. Dist. v. Gibson, 22 S.W.3d 849, 851-52 (Tex.
2000) (stating that a case is not ripe for determination of whether the plaintiff has a
concrete injury when the determination depends upon contingent or hypothetical facts, or
on events that have not yet occurred); see also In re H.B., No. 2-06-102-CV, 2006 Tex.
App. LEXIS 10247, at **5-7 (Tex. App.-Fort Worth Nov. 30, 2006, no pet.) (mem. op. on
reh'g) (holding that absent an actual injury from the operation of the family code,
appellant's constitutional challenge was not ripe, and any opinion by the court on that issue
would be merely advisory). Accordingly, we overrule appellant's first issue on appeal.

III. Possession of the Couple's Child

 In his second issue, appellant contends that the trial court abused its discretion in
denying him joint physical possession of the child. Specifically, appellant argues that the
trial court's decision to allow appellee to maintain physical possession of the child while
allowing appellant visitation is not in the best interest of the child and is unconstitutional. 
Appellee asserts that section 153.135 of the family code does not require that joint
managing conservators be given equal or nearly equal access to the child. See Tex. Fam.
Code Ann. § 153.135 (Vernon 2008). 

A. Standard of Review

 The best interest of the child shall always be the court's primary consideration in
determining issues of conservatorship, possession, and access to the child. Tex. Fam.
Code Ann. § 153.002 (Vernon 2008). The trial court is given wide latitude to determine the
best interest of a minor child. See Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982);
In re C.R.T., 61 S.W.3d 62, 65 (Tex. App.-Amarillo 2001, pet. denied); see also In re
V.N.S., No. 13-07-00046-CV, 2008 Tex. App. LEXIS 5131, at *4 (Tex. App.-Corpus Christi
July 3, 2008, no pet.) (mem. op.). The judgment of the trial court regarding possession and
access to the minor child will be reversed only if it appears from the record as a whole that
the court abused its discretion. See Gillespie, 644 S.W.2d at 451; see also Miles v.
Peacock, 229 S.W.3d 384, 391 (Tex. App.-Houston [1st Dist.] 2007, no pet.). Our review
must give deference to the trial court because it is in the best position to observe the
demeanor of the witnesses and evaluate their credibility. See In re De La Pena, 999
S.W.2d 521, 526 (Tex. App.-El Paso 1999, no pet.). A claim of abuse of discretion will not
succeed provided that some evidence of substantive and probative character exists to
support the trial court's factual findings. See In re J.R.P., 55 S.W.3d 147, 151 (Tex.
App.-Corpus Christi 2001, pet. denied); see also Holley v. Holley, 864 S.W.2d 703, 706
(Tex. App.-Houston [1st Dist.] 1993, writ denied) (holding that the evidence need not be
compelling or conclusive to support the trial court's exercise of discretion). Moreover, an
abuse of discretion ordinarily does not occur when the trial court bases its decision on
conflicting evidence. See In re K.R.P., 80 S.W.3d 669, 674 (Tex. App.-Houston [1st Dist.]
2002, pet. denied). 

 Section 153.135 of the family code provides that "[j]oint managing conservatorship
does not require the award of equal or nearly equal periods of physical possession of and
access to the child to each of the joint conservators." Tex. Fam. Code Ann. § 153.135; see
Garza v. Garza, 217 S.W.3d 538, 552 (Tex. App.-San Antonio 2006, no pet.). Additionally,
there is a rebuttable presumption that the standard visitation order provides reasonable
minimum possession of a child for a parent named as a joint managing conservator and
that such possession is in the best interest of the child. Tex. Fam. Code Ann. § 153.252
(Vernon 2008).

B. Discussion

 In the instant case, appellant argues that the trial court, by not allowing him equal
physical access with the child, reduced the time he could spend with his daughter, which
is not in her best interest. Appellant further argues that this reduction in time affects his
ability to "parent" his daughter, which he alleges is a violation of his constitutional rights. 
Appellant appears to take issue with the fact that appellee once lived a mere two blocks
away from appellant when they both resided in Edinburg. The proximity of their houses
allowed for appellant to be in "physical possession" of his daughter nearly 50% of the time. 
However, once appellee and her family moved to El Paso, this became an impossibility. 
In support of his argument, appellant states that "[b]eing with his daughter is the most
important source of [his] happiness[,] and it is also a source of happiness for his daughter." 
In his appellate brief, appellant requests that this Court reverse the trial court's possession
order and award him "possession on alternative weeks during the school year and half of
the summer and Thanksgiving breaks[,] Christmas[,] spring break[,] and other holidays
should remain as they are currently ordered."

 In the final divorce decree, the trial court appointed appellant and appellee as joint
managing conservators of the child. Appellee was granted the exclusive right to designate
the child's primary residence within Hidalgo County. With respect to possession, the trial
court entered a possession order, which provided appellant with access to the child on: 
(1) the first, third, and fifth weekends of every month; (2) Tuesdays during the school year
from 4:00 p.m. to 8:00 p.m.; (3) Wednesdays from 4:00 p.m. to 8:00 p.m. on weeks in
which he did not have weekend visitation; and (4) Thursdays during the school year from
4:00 p.m. to 8:00 p.m. The parties split possession on spring break and Thanksgiving,
and, in even-numbered years, appellant was allowed possession of the child on December
26 until the child's Christmas break concluded. In odd-numbered years, appellant was
allowed visitation from the day the child's Christmas break began until December 26. 

 Appellant filed a motion to modify the possession schedule, and, after a hearing, the
trial court, on February 27, 2008, modified the possession schedule to expand appellant's
summer visitation and provided appellant visitation with the child on Father's Day and
Friday night visitation. Yet, despite this expansion of the possession schedule, appellant
requests additional time with his daughter. Appellant argues that the trial court's refusal
to expand his access to the child inhibits his ability to raise his own child, which violates the
Due Process Clause of the United States Constitution. See U.S. Const. amend XIV.

 As previously mentioned, section 153.135 of the family code allows the trial court
to award joint managing conservators unequal access or possession of the child, and such
awards are presumptively in the best interest of the child. See Tex. Fam. Code Ann. §§
153.135, .252. While we recognize that parents have a constitutional right to make
decisions concerning the care, custody, and control of their children, see Troxel v.
Granville, 530 U.S. 57, 65-66 (2000); Holley v. Adams, 544 S.W.2d 367, 370 (Tex. 1976),
appellant has not cited us to authority finding a constitutional infringement based on a trial
court's order of unequal possession periods for divorced parents. Furthermore, to the
extent that appellant challenges the constitutionality of section 153.135, we will not address
such a contention because appellant failed to raise the challenge in the trial court. See
Tex. R. App. P. 33.1; see also Carrizales v. Tex. Dep't of Protective & Regulatory Servs.,
5 S.W.3d 922, 925 (Tex. App.-Austin 1999, pet. denied). Absent any authority finding that
section 153.135 of the family code infringes on the constitutional rights of parents to raise
their children, we cannot say that the trial court abused its discretion in denying appellant
joint physical possession on an equal basis with appellee. We overrule appellant's second
issue. IV. Appellee's Attorney's Fees Award

 In his third issue, appellant complains about two of the trial court's orders requiring
him to pay appellee's attorney's fees of $950 and $1,000, respectively. In particular,
appellant argues that appellee's counsel engaged in several instances of professional
misconduct, which do not warrant an award of attorney's fees. Because of this, appellant
alleges that the trial court treated him unfairly because he was advancing pro se. Appellant
requests that we order appellee to pay him $2,772 to account for his attorney's fees. (12) In
response, appellee contends that the family code authorizes the award of attorney's fees
because she prevailed on the matters at issue. 

A. Applicable Law

 An award of attorney's fees is prohibited unless authorized by contract or statute. 
See MBM Fin. Corp. v. Woodlands Operating Co., L.P., 292 S.W.3d 660, 669 (Tex. 2009);
see also Tony Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299, 310-11 (Tex. 2006). 
Section 9.014 of the Texas Family Code provides for an award of attorney's fees in
proceedings to enforce a divorce decree. Tex. Fam. Code Ann. § 9.014 (Vernon 2008); see
In re Marriage of Malacara, 223 S.W.3d 600, 603 (Tex. App.-Amarillo 2007, no pet.); see
also O'Neal v. Forehand, No. 13-08-457-CV, 2009 Tex. App. LEXIS 5091, at *16 (Tex.
App.-Corpus Christi July 2, 2009, pet. denied). Furthermore, in disputes pertaining to child
custody, section 152.312(a) provides that the trial court:

 shall award the prevailing party, including a state, necessary and reasonable
expenses incurred by or on behalf of the party, including costs,
communication expenses, attorney's fees, investigative fees, expenses for
witnesses, travel expenses, and child care during the course of the
proceedings, unless the party from whom fees or expenses are sought
establishes that the award would be clearly inappropriate.


Tex. Fam. Code Ann. § 152.312(a) (Vernon 2008). We review the trial court's award of
attorney's fees for an abuse of discretion. See Chavez v. Chavez, 12 S.W.3d 563, 566
(Tex. App.-San Antonio 1999, no pet.); Schneider v. Schneider, 5 S.W.3d 925, 930 (Tex.
App.-Austin 1999, no pet.).

 B. Discussion

 The trial court first granted appellee's counsel an award of $950 in attorney's fees
on December 26, 2007, following appellee's successful prosecution of her motion for
enforcement of child support pertaining to appellant's failure to pay child support from July
2007 to December 2007. At the February 1, 2008 hearing on appellant's motion to modify
the divorce decree, the trial court ordered appellant to pay appellee's counsel $1,000 in
attorney's fees, even though counsel had requested $4,000 in attorney's fees. 

 On appeal, appellant asserts that: (1) counsel for appellee presented orders to the
court without allowing appellant to review them; (2) the orders allegedly did not correspond
to the oral pronouncements made by the trial court; and (3) as a result of counsel's actions,
appellant had to hire an attorney and incur $2,772 in attorney's fees to correct the
discrepancies. Appellant, however, does not adequately explain on appeal how the orders
failed to correspond to the trial court's oral pronouncements in open court. See Tex. R.
App. P. 38.1(i). Furthermore, appellant does not direct us to a sworn affidavit that he
executed, which would support the veracity of his allegations that appellee's counsel and
the trial court failed to allow him to review proposed orders. See In re Butler, 270 S.W.3d
757, 759 (Tex. App.-Dallas 2008, orig. proceeding) ("An affidavit is a statement in writing
of a fact or facts signed by the party making it, sworn before an officer authorized to
administer oaths, and officially certified to by the officer under his seal of office. . . . An
affidavit must affirmatively show it is based on the personal knowledge of the affiant. . . . 
An affidavit is insufficient unless the statements in it are direct and unequivocal and perjury
can be assigned to them.") (internal citations and quotations omitted)). Moreover,
appellant complains that counsel's attorney's fee award was excessive "for doing basic and
routine work that is typically billed at a much lower rate." The record does not contain
evidence to support appellant's contention that the work done by appellee's counsel was
basic and routine and regularly billed at a much lower rate; thus, such an accusation is
conclusory, speculative, and does not demonstrate an abuse of discretion by the trial court. 
See Arthur Anderson & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 818 (Tex. 1997). 
Based on the foregoing, appellant has not demonstrated that the trial court abused its
discretion in awarding attorney's fees to appellee's counsel. (13) See Tex. Fam. Code Ann.
§§ 9.014, 152.312(a); see also Chavez, 12 S.W.3d at 566; Schneider, 5 S.W.3d at 930. 
Accordingly, we overrule appellant's third issue. 

V. The Trial Court's Removal of a Geographic Restriction

 In his fourth issue, appellant argues that the trial court violated section 105.002 of
the family code by ruling on appellee's motion to modify the geographic restriction
contained in the divorce decree. See Tex. Fam. Code Ann. § 105.002(c)(1)(E) (Vernon
Supp. 2009). Specifically, appellant contends that he requested a jury trial and paid the
appropriate fees; therefore, the trial court had no authority to rule on the geographic
restriction. See id. 

A. Applicable Law

 Section 105.002 of the family code governs jury trials in suits affecting the parent-child relationship, including suits "to modify access rights," Martin v. Martin, 776 S.W.2d
572, 574 (Tex. 1989) (considering the predecessor to section 105.002), and allows a party
to demand a jury trial in a suit affecting a parent-child relationship unless the suit seeks
adoption or to adjudicate parentage. See Tex. Fam. Code Ann. § 105.002(a), (b); see also
Lenz v. Lenz, 79 S.W.3d 10, 11-12 (Tex. 2002). A party is entitled to a jury verdict, and the
trial court may not contravene a jury's verdict on, among other things, the issue of "whether
to impose a restriction on the geographic area in which a joint managing conservator may
designate the child's primary residence." See Tex. Fam. Code Ann. § 105.002(c)(1)(E); see
also Spencer v. Vaughn, No. 03-05-00077-CV, 2008 Tex. App. LEXIS 1708, at *39 n.10
(Tex. App.-Austin Mar. 6, 2008, pet. denied) (mem. op.).

B. Discussion

 In his original answer to appellee's motion to modify the geographic restriction
imposed in the divorce decree, appellant requested that a jury determine the issue
regarding the geographic restriction. The record, however, does not reflect that appellant
paid the required jury fee. In his appellate brief, appellant states that he paid the required
jury fee and directs us to an "exhibit 1" as evidence to support his statement. We are
unsure about the location of "exhibit 1" in the record, as appellant has not designated a
page number in the record for this evidence. We notice that attached to appellant's original
answer to appellee's motion to modify is an "exhibit 1," which is possibly the "exhibit 1" to
which appellant was referring. However, "exhibit 1" is a blank, white page with only the
heading, "exhibit 1," at the top. This "exhibit" does not indicate that the required jury fee
was paid. Furthermore, in reviewing the remaining portions of the record, we do not find
any documentation that the jury fee was paid. See Tex. R. Civ. P. 216(b) (14); see also
Mercedes-Benz Credit Corp. v. Rhyne, 925 S.W.2d 664, 666 n.1 (Tex. 1996) (noting that
the time limitations apply with equal force to the application for jury trial and the payment
of the jury fee); Huddle v. Huddle, 696 S.W.2d 895, 895 (Tex. 1985) (op. on reh'g) (per
curiam). Thus, appellant has not satisfied the prerequisites for obtaining a jury trial on this
issue.

 As a result, the trial court conducted the hearing on appellee's motion to modify the
geographic restriction. (15) As noted earlier, the trial court concluded that appellee had
violated the original geographic restriction contained in the divorce decree and held her in
contempt. Appellee was fined $500 and was ordered to pay $1,500 of appellant's
attorney's fees, among other things. In addition, appellant received a child-support credit
of $1,489.32 to compensate him for appellee's violations. 

 Because appellant has not directed us to any evidence demonstrating that he
satisfied the prerequisites for requesting a jury trial, and because the trial court noted in its
August 18, 2009 order that the parties had waived their rights to a jury trial, we cannot say
that the trial court violated section 105.002 of the family code by addressing appellee's
request to lift the geographic restriction. See Tex. Fam. Code Ann. § 105.002. We overrule
appellant's fourth issue.

VI. Appellant's Enforcement Motion

 In his fifth issue, appellant asserts that the trial court treated him unfairly and that
the trial court delayed his case, which "amplified the damage that Mrs. [Zapien] has done
to the parent/child relationship." Appellant also complains that the trial court only awarded
him seven days of access to the child when he had been denied ninety-seven days of
access. Furthermore, appellant argues that the trial court treated him unfairly by not
holding appellee responsible for all of his costs to visit the child in El Paso despite the trial
court's finding that appellee had violated the geographic restriction contained in the divorce
decree. As a result of these alleged inequities, appellant requests that we sustain this
issue and award him ninety extra days of access to the child and $3,517 in costs
associated with visiting his daughter in El Paso and $8,440 in attorney's fees. See Tex.
Fam. Code Ann. §§ 157.167(b), .168 (Vernon 2008).

A. Applicable Law

 Section 157.168 of the family code provides that a party may be awarded additional
periods of access to a child to compensate for the denial of court-ordered possession or
access. Id. § 157.168(a). It is within the discretion of the trial court to determine whether
to grant such an award; however, if the trial court chooses to grant the award, the
additional periods of access or possession "must be of the same type and duration of the
possession or access that was denied." Id. § 157.168(a)(1).

B. Discussion

 On August 18, 2009, the trial court, after finding that appellee had violated the
geographic restriction contained in the divorce decree and had, therefore, deprived
appellant of access to his daughter, awarded appellant seven days of additional
possession or access during either the Thanksgiving or Christmas holidays of 2009. The
trial court's order specifies that appellee denied appellant access to the child repeatedly
from July 2008 to July 2009. At the time in which appellee denied appellant access to the
child, the trial court's February 27, 2008 visitation order was in effect, which provided
appellant with much more than seven days' access to the child. Because the trial court
concluded that appellee had denied appellant access to the child and, because the trial
court granted appellant additional access as compensation, the trial court was obligated
under section 157.168 to provide appellant with access or possession "of the same type
and duration of the possession or access that was denied." See id. Clearly, the trial
court's award of one week of additional visitation with the child shortchanges appellant for
the access and visitation he was denied by appellee from July 2008 to July 2009. See id. 
Appellant appears to be entitled to much more than one weeks' visitation in compensation
for appellee's denial of access to the child. See id. As such, we conclude that the trial
court erred in applying section 157.168 of the family code to compensate appellant for
access and visitation denied to him by appellee. See id. 

 With respect to his contention that the trial court treated him unfairly, appellant
baldly asserts that "[t]he judge [a visiting judge for the Hidalgo County Court at Law No. 1]
clearly made up her mind without hearing all the facts." Appellant directs us to one page
from the final hearing where the trial judge, after hearing the parties make the same
arguments over and over again, inquired: "Is there anything that you feel needs to be
reiterated or that I need to hear that may change my mind in the next five minutes . . .?" 
Based on this statement, appellant suggests that the trial court treated him unfairly. We
disagree.

 The record reflects that appellant repeatedly made the same arguments to the trial
court, each time hoping for a different result. Furthermore, as indicated by the various
orders entered by the trial court, appellant won on several issues he raised. Just because
he did not win on every issue raised does not mean that the trial court treated him unfairly. 
Moreover, appellant has not cited any legal authority supporting his claims. See Tex. R.
App. P. 38.1(i). Accordingly, in reviewing the record in its totality, we cannot say that
appellant was treated unfairly or that the trial court was biased against appellant.

 Regarding appellant's request for appellee to pay $3,517 in costs associated with
his trips to El Paso to visit his daughter, appellant cites us to section 157.167 of the family
code, which does not support his contention. See Tex. Fam. Code Ann. § 157.167
(providing for the recovery of attorney's fees and court costs when the trial court finds that
the respondent has failed to: (1) make child support payments; or (2) comply with the
terms of an order providing for the possession of or access to a child). Moreover, appellant
does not cite us to portions of the record, such as receipts or other documentary evidence,
supporting his argument that the trial court should have awarded him the $3,517 in costs
associated with his trips to El Paso. See Tex. R. App. P. 38.1(i). Thus, we conclude that
his request for the $3,517 in costs is inadequately briefed. See id. Additionally, appellant's
argument that he is entitled to $8,440 in attorney's fees lacks merit because the trial court,
in its August 18, 2009 order, ordered appellee to pay appellant $1,500 in attorney's fees,
which would correspond to section 157.167(b)'s requirement that the respondent pay
attorney's fees and costs if the trial court finds that they have failed to comply with a court
order. See Tex. Fam. Code Ann. § 157.167(b). Moreover, appellant has not directed us
to any evidence in the record demonstrating his entitlement to attorney's fees in addition
to those already awarded.

 Based on the foregoing, we sustain appellant's fifth issue as it pertains to the trial
court's award of access and visitation to the child under section 157.168 of the family code. 
See id. § 157.168. We overrule the remainder of appellant's fifth issue. 

VII. Conclusion 

 With respect to the trial court's award of access and visitation to appellant to
compensate for appellee's denial of access from July 2008 to July 2009, we reverse and
remand for the trial court to calculate the appropriate amount of access and visitation to
which appellant is entitled under section 157.168 of the family code. See id. We affirm the
remaining aspects of the trial court's orders.

 ROGELIO VALDEZ

 Chief Justice

 


Delivered and filed the 

24th day of June, 2010. 
1. The record reflects that at the time of the December 26, 2007order, appellee was a teacher for the
Edinburg Consolidated Independent School District and that appellee's employer covered the child's health
care expenses.
2. The trial court's February 27, 2008 order was superceded by an order signed on February 27, 2009,
which provided everything contained in the February 27, 2008 order and added that appellee was responsible
for paying for the child's private tuition unless she could demonstrate to the trial court that she could not, in
which case the tuition costs would be divided evenly between appellant and appellee. The February 27, 2009
order also ordered appellee not to relocate from Hidalgo County and to ensure that the child maintains contact
with appellant.
3. In his March 4, 2010 appellate brief, appellant informs this Court that he has now moved to El Paso
to be closer to his daughter and that he has filed another motion for enforcement in El Paso. This newly-filed
motion, however, is not within the scope of this appeal.
4. Appellant does not challenge the trial court's child support calculation of $1,073 in the divorce
decree.
5. Outside of appellant's own self-serving testimony, the record does not contain any evidence of
appellant's pursuit of finding employment once he moved back to Edinburg, nor does it contain competent
evidence of appellant's earned income and other financial resources from July 2007 to December 2007--the
time period in which appellant failed to make any child support payments.
6. Though we recognize that documents solely appearing in the appendix of an appellate brief are not
part of the record and are generally not considered on appeal, see Till v. Thomas, 10 S.W.3d 730, 733-34
(Tex. App.-Houston [1st Dist.] 1999, no pet.), we find it telling that appellant attached a line graph (Appendix
4) to his appellate brief, which indicated that he had approximately $30,000 in financial resources at the time
he ceased paying child support in July 2007. Moreover, appellant's own line graph indicates that he had
approximately $10,000 in financial resources in December 2007, when the trial court held him in contempt for
failing to pay child support.
7. On appeal, appellant does not challenge the trial court's award pertaining to the health insurance
coverage for the child.
8. In fact, when appellee's counsel asked appellant what he made from his online teaching job,
appellant refused to divulge his salary and stated that he made "dollars," as opposed to Japanese Yen, British
Pounds, Euros, and other world currencies that appellant referenced in his testimony.
9. Appellant's argument that appellee never requested this form of relief in the trial court lacks merit
because, as noted later, the record reflects that appellee orally moved the trial court to provide such relief.
10. We note that appellant insists that his daughter attend private schools yet attempts to avoid paying
the tuition to attend such schools.
11. Appellant has not presented any evidence to the trial court demonstrating that appellee proved her
inability to pay; that the trial court ordered him to pay half of the private school tuition as a result of appellee's
inability to pay; and that appellant has actually made such payments.
12. Appellant asserts, by this issue, that appellee should pay his attorney's fees; however, in the trial
court, appellant repeatedly argued that the parties should only be responsible for paying their own attorney's
fees.
13. Appellant also requests that we "reprimand" appellee's counsel "for his misconduct" and "report him
to the Texas Bar Association for violating its Texas Disciplinary Rules of Professional Conduct." Because the
record does not support appellant's allegations, we decline to do so.
14. Texas Rule of Civil Procedure 216 provides as follows:


 a. Request. No jury trial shall be had in any civil suit, unless a written request for a jury
trial is filed with the clerk of the court a reasonable time before the date set for trial
of the cause on the non-jury docket, but not less than thirty days in advance.

 

 b. Jury Fee. Unless otherwise provided by law, a fee of ten dollars if in the district court
and five dollars if in the county court must be deposited with the clerk of the court
within the time for making a written request for a jury trial. The clerk shall promptly
enter a notation of the payment of such fee upon the court's docket sheet.


Tex. R. Civ. P. 216. The trial court's docket sheet does not reflect that the jury fee was ever paid by appellant. 
See id. at R. 216(b). Furthermore, appellant has not filed a sworn statement in the trial court indicating his
inability to pay the required jury fee. See id. at R. 217.
15. In further support of our conclusion in this issue, the trial court, in its August 18, 2009 order, stated
that the parties had waived their rights to a jury trial on this issue.